## THE LIFE ASSOCIATION OF AMERICA

*v.*

## ALFRED K. FASSETT.

*Filed at Springfield March 28, 1882.*

1.  CORPORATION—*effect of dissolution—as to property of the corporation.*  Upon the dissolution or civil death of a corporation, all its real estate, by the strict rule of the common law, reverts to the original owners or their heirs, and all its personal estate vests in the Crown, in England, and the State here, and all debts due to or from it are, by operation of law, extinguished. But a court of equity will, upon the dissolution or civil death of a corporation, lay hold of its corporate property as a trust fund for creditors and shareholders, and distribute it for their benefit.

2.  SAME—*continuance after dissolution, to settle its affairs.*  It is the settled policy of this State, at least so far as domestic corporations are concerned, that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the purpose of settling up their affairs, and having their property applied for the payment of their just debts, and no reason is perceived why the same policy should not, so far as practicable, be extended to foreign corporations that have property here, and are located among us for business purposes.

3.  Where a decree against a corporation in terms declares it to be dissolved, and appoints a receiver, yet in other parts thereof authorizes suits to be brought and defended in the name of the corporation, for the purpose of winding up its affairs and paying its debts, and it is also authorized, for the same purposes, to make, in its corporate name, all necessary conveyances of its property and effects, the corporation will not be treated as absolutely extinguished, but regarded as kept in existence to collect and apply its assets to the payment of its debts.

4.  SAME—*prior attachment lien—subsequent dissolution of corporation.*  The lien of an attachment rightfully acquired by a levy upon the property of a corporation, domestic or foreign, doing business in this State, and holding property here, will not be defeated by a decree under insolvent proceedings, dissolving the corporation and appointing a receiver to take charge of its assets and effects.  The corporation will be treated as still existing for the purpose of enforcing the attachment lien, by proceeding to judgment and execution.

5.  ABATEMENT—*death of plaintiff.*  The death of a plaintiff pending the suit must be taken advantage of by plea in abatement, otherwise the judgment in his name will be binding.

6.  SAME—*death of sole defendant.*  Where the fact of the death of the sole defendant to a suit is admitted, or the court itself is cognizant of such

| 102 | 315 |
|---|---|
| 127 | 274 |
| 102· | 315 |
| 128 | 227 |
| 129 | 247 |
| 129 | 410 |
| 102 | 315 |
| 139 | 432 |
| 143 | 205 |
| 102 | 315 |
| 153 | 643 |
| 102 | 315 |
| 52a | 173 |
| 102 | 315 |
| 72a | 369 |
| 102 | 315 |
| 176 | 51 |
| 102 | 315 |
| 83a | 685 |
| 102 | 315 |
| 183 | 617 |
| 102 | 315 |
| 183 | 617 |
| 102 | 315 |
| 186 | 790 |
| 102 | 91a |
| 102 | 92a 7 |
| 102 | 315 |
| 103a | 6593 |
| 102 208 10 | 315/ 77 |
| 102 | 315 |
| e213 | 2576 |
| 213 | 2578 |

fact, it will not be justified in entering up a judgment without the legal representatives of the deceased being first made parties. In such a case, if the plaintiff does not, within a reasonable time, take the proper steps to make them parties, the court should, on its own motion, enter a judgment or order that the suit abate.

7. SAME—*plea must be verified.* Every pleading which sets up matter in abatement which does not appear of record to be true, must be verified by affidavit, and if not so verified, should be stricken from the files, on motion. So, a suggestion of the dissolution of a defendant corporation by its receiver and successor, the receiver not seeking to be made a party and the paper not verified, can not be acted on by the court, and the plaintiff is not bound to answer it as a plea in abatement.

8. JUDGMENT—*taken against a deceased person is a nullity.* By the common law, in the absence of any statutory provision on the subject, a judgment against a dead person, either natural or artificial, is absolutely void, and the fact that service may have been obtained, or the suit commenced before the death of the party, makes no difference. This rule of the common law as to judgments against natural persons, is still in force in this State.

9. PRACTICE—*who may suggest defendant's death.* There is nothing in section 11, of the Abatement act, that authorizes the representative of a deceased defendant to intrude himself into a case for the purpose of suggesting the defendant's death, except it is done to make himself a party to the suit for the purposes of defence, or other legitimate object. To avail himself of the statute he must submit himself unreservedly to the jurisdiction of the court, and be substituted as a defendant for all purposes.

10. SAME—*forum to correct error of fact.* A judgment taken against an infant, dead person, married woman, and the like, when the character of such person is not properly brought to the attention of the trial court, and made to appear of record, must be reviewed, in the first place, in the court where the judgment was rendered, by writ of error *coram nobis*, or by motion, under the modern practice.

11. WRIT OF ERROR—*after dissolution of corporation—by whom.* If a corporation is absolutely extinct, so as to be presumed civilly dead, no writ of error can be prosecuted in its name to correct an error in the circuit court, but it should be prosecuted in the name of the receiver, where one has been appointed, as its legal representative, and the law in this respect can not be changed or suspended by a decree of any court, foreign or domestic.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. CARR & REYNOLDS, for the plaintiff in error:

Every person contracts with a corporation with full knowledge that the State under whose authority it was created may arrest its franchises, and dissolve it, and wind up its affairs. *Mumma* v. *Potomac Co.* 8 Peters, 281; Rorer on Inter-State Law, 78; Thompson on Stockholders' Liability, sec. 3.

The dissolution of a corporation, as provided by the laws of the State creating it, operates as its legal death in every other State in which it may be doing business. *Farmers and Mechanics' Bank* v. *Little*, 8 Watts & Serg. 207; *Relfo* v. *Reindle*, 103 U. S. 222.

A court has no authority to render judgment against a natural person after his death. *Vaughan* v. *Sturtevant*, 7 T. R. 372.

Judgment against a corporation after its dissolution is suggested of record, without reviving against its representatives, is not only erroneous, but absolutely void. Thompson on Stockholders' Liability, sec. 335; *Scanlon* v. *Crawshaw*, 5 Mo. App. 337; *National Bank* v. *Colby*, 21 Wall. 609; *Greeley* v. *Smith*, 3 Story, 657; *Merrill* v. *Suffolk Bank*, 31 Me. 62; *Ingraham* v. *Terry*, 11 Humph. 574; *Saltmarsh* v. *Planters and Merchants' Bank of Mobile*, 17 Ala. 761; *McCullough* v. *Norwood*, 58 N. Y. 562; *Wilson* v. *Terson*, 12 Ind. 285; *Bank of Mississippi* v. *Wram*, 3 S. & M. 790; *People* v. *Walker*, 17 N. Y. 502; *Lagrange & M. R. R. Co.* v. *Rainey*, 7 Cold. 420.

While the legislature may prescribe the terms on which foreign corporations may do business here, it can not authorize the courts to prolong their existence, after their dissolution by a decree of the court of the State of their creation. *Farmers and Mechanics' Bank* v. *Little*, 8 Watts & Serg. 277; *Booker* v. *Hall*, 60 Maine, 172; *Ordway* v. *Bank*, 47 Md. 217.

Mr. C. L. CONKLING, for the defendant in error:

A writ of error being a new suit, if the corporation is dead it could not sue or be sued, and this writ of error should abate. *Ripley* v. *Morris*, 2 Gilm. 381; *Hickman* v. *Haines*, 5 id. 20; *Roberts et al* v. *Fahs et al.* 32 Ill. 474; *Orr* v. *Thompson*, 4 Gilm. 451; 1 Chitty's Pleadings, 1, 2, 3, 12; *Larned* v. *Carpenter*, 65 Ill. 543.

A person who assumes a name which imports a corporate existence, and by it exercises corporate powers, is estopped from denying the existence of the corporation. *United States Express Co.* v. *Bedbury*, 34 Ill. 459.

The question of the dissolution of a corporation, and the effect thereof, should be raised by plea in abatement. A corporation is unlike a natural person, and a mere suggestion of its dissolution does not raise a presumption that it can not be sued. *In re Independent Ins. Co.* 1 Holmes, 104; *Holloway et al.* v. *Freeman*, 22 Ill. 201; *Express Co.* v. *Haggard*, 37 Ill. 465; Hurd's Stat. 1877, ch. 1, sec. 1.

Even if the suggestion is to be treated as a plea in abatement, it was properly stricken from the files, because not verified. *Fowler* v. *Arnold*, 25 Ill. 284.

Proceedings by attachment do not abate by the death of the defendant. Hurd's Stat. 1877, ch. 3, sec. 11, ch. 1, sec. 13; *Davis et al.* v. *Shapleigh et al.* 19 Ill. 386; *Rauh* v. *Reitchie*, 1 Bradw. 191.

Foreign corporations are non-residents, and their property is subject to attachment, like that of natural persons. *Mineral Point R. R. Co.* v. *Keep*, 22 Ill. 9; Drake on Attachments, (4th ed.) sec. 70; Hurd's Stat. 1877, ch. 131, sec. 1, sub. 5.

One seeking to defeat an attachment on the ground the defendant corporation is dissolved, and that he, as receiver, is its sole representative, and entitled to the possession of its property, should interplead. Hurd's Stat. 1877, ch. 11, sec. 29; *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 348.

The decree of the Missouri court, although using the word "dissolve," does not operate as an absolute dissolution of the corporation, but keeps it alive for certain purposes. Suits may still be prosecuted or defended in the corporate name after dissolution of the corporation. Hurd's Stat. 1877, ch. 73, sec. 107; *Ramsey* v. *P. M. & F. Ins. Co.* 55 Ill. 311.

The tendency of modern decisions is to treat corporations once existing as continuing to exist, for the purpose of suing and being sued, in winding up their affairs. And courts of foreign States will, upon the slightest opportunity, keep them alive for such purposes. *Pomeroy* v. *Bank*, 1 Wall. 23; *Shackleford* v. *Railroad Co.* 52 Miss. 159; *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 348.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

Alfred K. Fassett, a creditor of the Life Association of America, a corporation organized under the laws of, and having its principal office and place of business in, the State of Missouri, on the 15th of October, 1879, sued an attachment out of the circuit court of Sangamon county, and caused the same to be levied upon certain lands belonging to the company in this State, where it had lately been doing an insurance business. Subsequently, on the 18th of the same month, by a decree of the circuit court of the city of St. Louis, on the petition of William S. Relfe, superintendent of the Insurance Department of the State of Missouri, the Life Association of America was declared insolvent, and dissolved, and by virtue of the proceedings there had, all its assets and property, of every kind and description, were turned over to, and by the decree declared to be vested absolutely in, the said William S. Relfe, as the receiver and successor of the company. Subsequently, on the 20th of February, 1880, the said Relfe, in his character of superintendent, by leave of the court, entered a special appearance in the attachment proceeding commenced by Fassett against the company, for the purpose of filing a

written suggestion of the dissolution of the company under the legal proceedings in Missouri, as above stated. Fassett, by his counsel, entered a formal motion to strike the suggestion from the files, on the hearing of which Relfe offered in evidence the record of the proceedings in the St. Louis circuit court, limiting his appearance for that purpose only. Upon consideration of the matter the circuit court entered an order striking the suggestion from the files, to reverse which order Relfe removed the cause to the Appellate Court for the Third District, where the same was affirmed, and Relfe now brings the record to this court, by writ of error, for review, and assigns for error the affirming of the order of the circuit court sustaining the motion to strike the suggestion from the files.

Whether Relfe, as superintendent of the Insurance Department of Missouri, under the circumstances stated, is entitled to the property, and to administer the same under the laws of Missouri, is not directly presented by this record. Under our statute it would have been perfectly competent for him to have entered an appearance, and by interpleader submitted his rights in the attached estate to the consideration and judgment of the court. This, however, he very carefully and studiously avoided. We are not aware of any rule of law or practice that warrants the filing of such a suggestion under the circumstances stated, unless it be assumed that our Statute of Abatement applies to corporations as well as individuals. It is well understood, in the construction of statutes, the word "person" or "persons" is often held to include corporations. Indeed, by the 5th clause of section 1, of chap. 131, Rev. Stat. entitled "Statutes," it is expressly provided that "the word 'person' or 'persons,' as well as all words referring to or importing persons, may extend to and be applied to bodies politic and corporate as well as individuals," and the position that the several provisions of the Abatement act relating to the death of parties were intended to apply to

a dissolved corporation which has a legal successor, is not without force. But whether this be so or not, and about which we express no opinion, we are clear there is nothing in the Abatement act that warranted the course taken by Relfe to raise the question of the dissolution of the company. The 11th section of that act provides, in substance, that where a sole defendant in any action dies before final judgment, such action shall not on that account abate, if it might originally have been prosecuted against his legal representatives, but in such case "the plaintiff, petitioner or complainant may suggest such death on the record, and shall, by order of the court, have summons against such person or legal representative," etc.

There is clearly nothing in this provision that authorizes the representative of a deceased defendant to intrude himself into a case for the purpose of making such a suggestion, unless it is done to make himself a party to the suit for the purposes of defence, or other legitimate object. To avail himself of the statute he must submit himself unreservedly to the jurisdiction of the court. The object of the statute was to provide a cheap and expeditious mode by which the legal representatives of a deceased party to a suit may be substituted for the deceased. The representatives of a deceased defendant are not bound to make such application. They may or may not, just as they please; but if they elect to do so, they must be substituted for all purposes. On the other hand, if they omit or decline to make application to be thus substituted, they are not to be prejudiced by it. If the plaintiff proceed and take judgment against a deceased defendant without making his legal representatives parties, he does so at his peril. As to his legal representatives, it will be time enough for them to interpose when it is sought to enforce the judgment. Not having been made parties to it, they are not bound by it. As to them it is simply a nullity.

It is not to be inferred from anything we have said that where the fact of the death of a defendant to a suit is admitted, or where the court itself is cognizant of such fact, it would be justified in entering up a judgment without the legal representatives of the deceased being first made parties. In such case, if the plaintiff does not, within a reasonable time, take the proper steps to make them parties, the court should, on its own motion, enter a judgment or order that the suit abate.

But it may be claimed that although the limited appearance of Relfe, and the filing by him of the suggestion, can not be regarded as an application, under the statute, to be admitted as a party to the suit, as we have held it can not, still, the civil death of the defendant constituted matter of abatement, and Relfe, as the legal representative of the defendant company, had, on common law principles, the legal right to appear in the cause for the purpose of interposing such defence, and in this view the suggestion should be regarded in the nature of a plea in abatement. Viewing it in this light, the suggestion was clearly insufficient, both in form and substance. It is well settled that every pleading which sets up matter in abatement which does not appear of record to be true, must be verified by affidavit, and if not so verified, should, on motion, be stricken from the files. *King* v. *Haines,* 23 Ill. 340; *Cook* v. *Yarwood,* 41 id. 115; *McNab* v. *Bennett,* 66 id. 157. The law has wisely prescribed certain forms in which defences of all kinds are required to be interposed, and a proper administration of justice requires they should be substantially followed. In the case last cited, where an informal motion in the nature of a plea in abatement had been made to dismiss the suit for an alleged want of jurisdiction, which was unsupported by affidavit, and had been stricken from the files on motion, this court, in holding there was no error in doing so, said: "Even if the question could have been raised by motion, the court did not err in

striking the paper from the files, because it was not informed in any proper manner as to the truth of the extrinsic facts alleged in the written motion." The statement of facts in the suggestion were in no manner verified, hence the court was not authorized to act upon it when filed, even if it had, in other respects, been a formal plea in abatement, and the plaintiff was under no obligation to answer it. Nor was the insufficiency of this paper, considered in the nature of a plea, cured, in this respect, by Relfe subsequently offering in evidence the record of the proceedings in the St. Louis circuit court, for that did not at all change the character of the paper as originally filed, and, upon the motion to strike it from the files, the only question which the court could properly consider, was whether the paper, as originally filed, was legally sufficient, and that was purely a question of law, upon which the record could not have the slightest bearing. The record being a mere instrument of evidence, there was no issue of fact to which it could possibly relate, hence the offering it in evidence was of no legal consequence or significance whatever.

Upon the dissolution or civil death of a corporation, all its real estate, by the strict rule of the common law, reverts to the original owners or their heirs, and all its personal estate vests in the Crown, in England, and the State here, and all debts due to or from it are by operation of law extinguished. Angell & Ames on Corporations, 195.

Equity, however, views the matter in quite a different light. In equity the corporation is regarded as a trustee holding the corporate property for the benefit of its creditors and shareholders, which, upon its dissolution or civil death, a court of chancery will lay hold of as a trust fund, and distribute for their benefit. With a view of mitigating the rigor of the common law with respect to the effects of a defunct corporation, the legislature of this and most, if not all, of the other States of the Union have, by appropriate legislative enact-

ments, provided for a just and equitable distribution of their assets in cases of insolvency, or sudden dissolution from any cause, and our own act on the subject contains a provision which in express terms extends their corporate existence two years from the date of their dissolution, for such purpose. Sections 10 and 25, chap. 32, Rev. Stat.

From these and other provisions of the statute it clearly appears that it is a part of the settled policy of the State, at least so far as domestic corporations are concerned, that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts, and we see no sufficient reasons why the same policy should not, so far as practicable, be extended to foreign corporations that have property here, and are located among us for business purposes. These wise and wholesome laws have been ordained chiefly for the protection of our own citizens, and it is but just they should be enforced, so far as may be, against foreign as well as domestic corporations.

When the attachment in this case was sued out, there was no legal impediment in the way of enforcing the plaintiff's claim. It was rightfully levied upon the company's lands, and became an existing 'lien upon them, and a security for the attaching creditor's claim. If the company were a domestic corporation, it is clear this lien could not be defeated by a decree of dissolution under insolvent proceedings here. The company would be regarded, notwithstanding such decree, as still existing, for the purposes of enforcing the attachment lien, by proceeding to judgment and execution in the usual way, and we see no sufficient reason why foreign corporations owning property and doing business here should not be regarded in the same way, and placed upon an equal footing in this respect with domestic corporations.

Whatever may be the effect of a decree of dissolution in the State creating the corporation, it may nevertheless be regarded as at least a *de facto* corporation here, for the purpose of enabling creditors to reach its effects in this State. This view is not only eminently just to the creditors here, but places all corporations doing business in this State upon the same footing in this respect. This view of the matter is substantially recognized in *The City Insurance Company of Providence* v. *The Commercial Bank of Bristol*, 68 Ill. 348, which was a case, in all its essential features, like the present. It was there said: "There is nothing in the comity which exists between States that makes it improper our courts should afford this remedy (attachment), notwithstanding the fact, by the laws of the State which created this corporation, its effects are in the hands of a receiver."

It is not denied, or even questioned, that by the common law a corporation which has been dissolved absolutely, for all purposes whatsoever, stands upon the same footing as a dead person with respect to any power in the courts to enter a valid judgment against it. In the absence of any statutory provisions on the subject, the manifest logic and reason of the thing is the same in both cases. Much the largest portion of the authorities on this subject relate to natural persons, and it is to be regretted they are anything but harmonious.

Much of the confusion and uncertainty which prevail in the authorities on this subject is attributable, doubtless, to the fact that courts, in jurisdictions where the common law system obtains, in attempting to follow the adjudications of other courts, have failed to distinguish the cases resting on purely common law grounds from those resting, in whole or in part, upon statutes modifying the common law. A careful examination of the authorities clearly shows that a judgment by the common law, in the absence of any statutory provisions on the subject, against a dead person, either natural or

artificial, is absolutely void, and the fact that service may have been obtained, or the suit commenced, before the death of the party, makes no difference in this respect; and this was unquestionably the rule from the earliest period of the common law down to the seventeenth year of the reign of Charles II, when the British Parliament passed the first act somewhat modifying the common law on the subject. *Randal case,* 2 Mod. 308; 1 Salk. 8; 2 Sandf. 72, note m. The rule of the civil law was the same. 7 Rob. Practice, 157.

By statute (17 Car. 2, chap. 8, sec. 1,) it was enacted, in substance, that the death of neither plaintiff nor defendant, between verdict and judgment, should be assigned for error, provided the judgment should be entered up within two terms after such verdict. The courts of Westminster, in giving a construction to this act, held that where a party—and there was no difference between plaintiff and defendant in this respect—died in term time, though before verdict, the cause might nevertheless proceed to trial and judgment, upon the theory the entire term was in contemplation of law but one day. (2 Sandf. 72, note m.) The judgments in these cases were entered precisely in the same manner as if the death of the party had not occurred, and the statute applied as well where the right of action did not survive to or against the legal representatives of the deceased party, as where it did. Ibid.

The next legislation on the subject was the statute of 8 and 9, W. 3. Section 6, chapter 11, of that act, provided, in substance, that in all actions to be commenced in any court of record, if the plaintiff or defendant should happen to die after interlocutory and before final judgment, the action should not by reason thereof abate, if such action could be originally prosecuted or maintained by or against the executors or administrators of the party dying; but the plaintiff in such case, or, in the event of his death after such interlocutory judgment, his executors or administrators, might have a

*scire facias* against the defendant, or, if he should die after
such interlocutory judgment, then against his executors or
administrators,. to show cause why damages should not be
assessed or recovered in such action, etc. It will be per-
ceived that this act is in some of its main features much like
our own statute on this subject, and is doubtless the original
from which our own was modeled, though ours is unquestion-
ably a great improvement on the English model. This act,
it will be further observed, extends only to cases where the
death of either party occurs after an interlocutory judgment.

This brief reference to the earlier decisions founded on the
common law, and subsequent legislation on the subject,
clearly shows that the idea that a judgment against a dead
person is voidable only, had its origin in the construction
given to the act of 17 Car. 2, above mentioned, and any
extension of the doctrine to cases not falling within that act,
or other acts of a similar character, would, on principle, be a
clear misapplication of it. It is also to be observed that these
statutes, having both been passed since the fourth year of
the reign of James I, are not of any binding force in this
country, and it is clear the decisions of the English courts
construing them are likewise, on principle, of no authority
here, and so far as they have been acted upon by the courts
of this country in deducing the common law as to the effect
of a judgment for or against a dead person, they have led,
as already remarked,. to much. misapprehension and confu-
sion on the subject. Such a judgment, when tested. by the   .
common law alone, as we have already seen, is absolutely
void.· Prior to the legislation above referred to, there was no
difference, as respects the validity of a judgment, whether it
was rendered against or in favor of a dead party. It was
equally void in either case. The very wording of these acts
shows such was understood to be the rule at the time of their
adoption. The law, however, in course of time became set-
tled in England the other way, so far as it relates to judg-

ments in favor of dead plaintiffs, and the rule became firmly established that the death of the plaintiff must be taken advantage of by plea in abatement, otherwise the judgment would be binding. And such is the general doctrine on the subject at this time. (*Stoetzell et al.* v. *Fullerton*, 44 Ill. 108.) And many respectable courts and authors in this country apply the same rule to judgments against deceased defendants, where they die after having been regularly served with process. According to these authorities such judgments are voidable only, and hence can not be successfully assailed in a mere collateral proceeding. Freeman on Judgments, secs. 140 and 153.

We are of opinion, however, there is just ground for a distinction in the two classes of cases. Where a suit is being prosecuted in the name of a dead plaintiff, the defendant may well plead the fact in abatement, and there is no great hardship in holding that if he does not so take advantage of it the judgment shall bind him, when collaterally drawn in question. In the nature of things, the deceased defendant can not plead in abatement, or otherwise interpose, the fact of his own death, and his legal representatives, until brought into court by the plaintiff, as contemplated by the statute, are not supposed to be present, or to know anything about the pendency of the suit, and to hold a judgment obtained under such circumstances binding upon them, would seem not only inconsistent with well settled principles, but would probably lead to the perpetration of great frauds. We are, therefore, clearly of opinion such judgments are, as already stated, absolutely void.

In addition to the reasons already given why we hold the company to be still existing for the purposes of enforcing the claim of defendant in error, it may be further stated, that although the decree of the St. Louis circuit court, in terms, declares the corporation dissolved, yet by other portions of the decree, for the purpose of winding up the business of

the company, paying its debts, etc., suits are authorized to be brought and defended in the name of the corporation, and it is also authorized, for the same purpose, to make, in its corporate name, all necessary conveyances of its property and effects. It is thus clear, when all the provisions of the decree are considered together, as they should be, the corporation is not absolutely extinguished for all purposes, but, on the contrary, is expressly kept alive, so far as its existence may be necessary, to collect and apply its assets to the payment of its debts, (*Ramsey* v. *Peoria Marine and Fire Ins. Co.* 55 Ill. 311,) and therefore it can not with propriety be said to be civilly dead, to the extent of abating suits pending against it in a foreign State.

If, then, the company still exists in its own State for the purpose of suing and being sued, and having its property applied to the payment of its debts, and for the purposes of making conveyances and transfers of its property to accomplish the same ends, how can it consistently be said that it has no existence here, for like purposes? The attached lands in this State still belong to the company, unless they have since been conveyed by it to some one else, for the title to them could not possibly have passed by the Missouri decree to the receiver. (*City Ins. Co.* v. *Com. Bank*, 68 Ill. 348.) If they have subsequently been conveyed by the company, the grantee took them subject to the attachment lien.

But there is still another view of this case which we regard as fatal to plaintiff in error. If the corporation is absolutely extinct, so as to be pronounced civilly dead, on what principle can this writ of error be maintained? It is a familiar doctrine that the suing out of a writ of error is the commencement of a new suit, and assuming the circuit court erred in not abating the suit, and that the error may be corrected upon a writ of error *coram nobis*, then this writ of error should have been prosecuted in the name of the receiver, as the legal successor of the corporation. Upon

the hypothesis just stated there is no more propriety in suing out the present writ of error in the name of the defunct corporation, than there would be in an heir or executor suing out a writ of error in the name of the deceased ancestor or testator, to reverse a judgment entered against him in his lifetime, and it will be admitted such a writ could not be maintained.     Nor does the fact that the Missouri decree authorized suits to be brought in the name of the corporation after its alleged dissolution, make any difference in this respect, here.     That provision of the decree, whatever its effect might be in Missouri, could not affect the legal procedure of our courts.     By the law of this State no suit can be maintained in the name of a dead person, where the objection is taken in apt time, or the fact appears of record, and it is clear the law in this respect can not be changed or suspended by the decree of any court, foreign or domestic. It follows, therefore, that if the position of plaintiff in error is correct, this writ of error should be dismissed.     *Barret et ux.* v. *Gaston, Exr.* Breese, 255.

Moreover, if the error complained of existed, and the suit was brought by the proper party, still, under the circumstances of this case, we do not think this is the proper forum. in which to obtain redress.     The doctrine is well settled that a judgment taken against an infant, dead person, married woman, or the like, where the character of such person is not properly brought to the attention of the trial court, and made to appear of record, must be reviewed, in the first place, in the court where the judgment was rendered.     The judgment in such cases is supposed to be founded upon a misapprehension of facts, hence the error is required to be corrected in the same court, as courts of error proper only review errors in law.     By the common law the ordinary method of correcting an error of this kind is by a writ of error *coram nobis*, but the modern practice is to accomplish the same thing by motion.     If the court should, on proper

Syllabus.

application, refuse to correct the error where its existence is clearly established, the question would then be reviewable in this court,—and so it would, also, if the question was properly raised, and the error made to appear of record in the first instance; but, as we have already seen, that was not done in this case.

Upon all the grounds suggested, we think the law is with the defendant in error.

*Judgment affirmed.*