Nelson G. Rodgers, Plaintiff, *v.* The Adriatic Fire Insurance Company, Defendant.

In the Matter of the Petition of Arianna E. Scammon, as Executrix, etc., of J. Young Scammon, Deceased, Appellant; The Metropolitan Trust Company of the City of New York, Respondent.

*Foreign judgment recovered after the dissolution of a domestic corporation—its effect—by what law determined.*

All actions pending in the courts of the State of New York or of another State, against a domestic corporation, are ended by a judgment in an action brought for that purpose dissolving the corporation, and unless, by authority of the court which appointed him, the receiver of the corporation intervenes so that jurisdiction is continued, a judgment enforcible against the corporation or its receiver, or one enforcible against the assets or property of the corporation within the State of New York, cannot be obtained after such judgment of dissolution.

A judgment recovered in Illinois in 1889, against a corporation of the State of New York which was dissolved in 1883, does not constitute a valid claim against assets in the hands of the receiver of the corporation in the State of New York. The effect of a judgment of dissolution is to be determined by the law of the State where it is granted, and it is not within the power of the Legislature or of the courts of another State to impair the force of such a decree.

*Quœre,* as to what effect the statute of another State upon this subject has in regard to assets of the corporation in that State.

APPEAL by the petitioner, Arianna E. Scammon, as executrix, etc., of J. Young Scammon, deceased, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 19th day of March, 1895, denying her petition that the Metropolitan Trust Company of the city of New York be directed to pay to her the sum of $232.26 out of the funds in its hands as receiver of the Adriatic Fire Insurance Company.

*Charles B. Alexander*, for the appellant.

*Oliver P. Buel*, for the respondent.

O'BRIEN, J. :

In the year 1874, J. Young Scammon, petitioner's testator, held two matured policies issued at Chicago, Illinois, by the Adriatic Fire Insurance Company, a New York corporation. In July, 1875, the insured property having been destroyed by fire, actions were brought against the company on each policy within the time required by their terms. The company was duly served with process of the court of general jurisdiction of the State of Illinois, and appeared and defended each action. Suits were also brought by Scammon against a number of other insurance companies upon other policies issued upon the same property. While these actions were pending stipulations were entered into by which, in effect, it was provided that all the suits should abide the event of Scammon's suit against the Commercial Union Assurance Company.

In 1879 an action for the dissolution of the Adriatic Fire Insurance Company was begun in the Supreme Court of this State, and thereafter one William A. Seaver, president of the company and owner as is claimed of all the stock, was made receiver, and it is alleged that he assumed control of the defense of the two actions of Scammon against the company, and, in fact, though not in name, was connected with such defense as receiver until his death, when one Nelson G. Rodgers was appointed receiver in his stead and continued as such until June, 1883, when he was removed and the Metropolitan Trust Company of New York was substituted and continued as such receiver pursuant to the judgment of dissolution,

which was entered against the company in August, 1883. The Metropolitan Trust Company thereafter conducted the defense until notified in February, 1887, of the decision of the case of *Scammon* v. *The Commercial Union Assurance Company*, the event of which action, as stated, the actions against the Adriatic Company were to abide, when it paid the counsel appearing in the actions and stated to them that it would not continue to be represented in the litigation, and thereafter counsel did not appear. It is claimed that neither the petitioner's testator nor his attorneys had any notice of the proceedings for the dissolution of the company, and that they did not know of such proceedings or that any orders had been made thereunder until after judgments had been taken by default against the company in 1889.

In 1884 a referee was appointed to take and state the receiver's accounts; the referee advertised for claims and thereafter reported to the court, and by order the receiver was directed to retain in its hands a sum to await the final disposition of the Scammon claims; and it is to reach the sum so retained and upon the strength of the judgment obtained by default in Illinois in 1889, that the petitioner seeks the aid of the court.

If the Illinois judgments are illegal and unenforcible against the receiver in this State, then the order appealed from was right. The crucial question presented, therefore, is : Were the judgments entered in favor of the petitioner's testator valid, notwithstanding the previous dissolution of the corporation? Their validity is claimed upon the ground that, the Illinois court having general jurisdiction and having the right, regardless of the dissolution of the corporation, to proceed during the term of two years, by the statute of Illinois, as well as by the stipulations made in the suits pending in that State, the judgments entered were valid both in Illinois and New York.

In regard to the stipulations, all that need be said is that the first, by its terms, expired on the reversal of the judgment in the case of the Commercial Union Assurance Company ; and the second, which was made subsequent to the dissolution of the corporation, was entered into without authority.

This brings us to the question as to the effect of the Illinois statutes, and upon the view taken by the Illinois courts as to the con-

struction of their own statutes, no more instructive case can be found than that of *Life Association, etc.,* v. *Fassett* (102 Ill. 315). As therein said : " From these and other provisions of the statute, it clearly appears that it is a part of the settled policy of the State, at least so far as domestic corporations are concerned, that, upon their dissolution, however that may be effected, they shall, nevertheless, be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts ; and we see no sufficient reasons why the same policy should not, so far as practicable, be extended to *foreign corporations that have property here* and are located among us for business purposes." It will thus be seen that the extent to which that decision goes is in holding that the dissolution of the corporation shall not take away or impair a remedy given against such corporation previous to its dissolution as respects assets or property in that State. As said in another portion of the opinion in that case : " Whatever may be the effect of a decree of dissolution in the State creating the corporation, it may nevertheless be regarded as at least a *de facto* corporation here, for the purpose of enabling creditors to reach its effects in this State." And again : " It is not denied or even questioned that by the common law a corporation which has been dissolved absolutely for all purposes whatsoever, stands upon the same footing as a dead person with respect to any power in the courts to enter a valid judgment against it." We do not find, therefore, either in the language of or the construction given to the statutes of Illinois, that the judgments so entered after the dissolution of the company were valid for any purpose except to reach assets of the company which might be in that State.

If, however, there was a statute that went as far as claimed by appellant, we do not think it would give the judgments validity in this State. It must be remembered that the Adriatic Fire Insurance Company was a creature of our own statutes, and the judgment dissolving it pursuant to our statutes put an end to its existence, and it was not in the power of the Legislature or the courts of any other State to impair the force of the decree of dissolution in New York. Neither the Constitution of the United States nor any principle of comity goes to the extent of permitting such interference. The suggestion that full faith and credit shall be given to the judg-

ments of other States is thus answered by Story in his Conflict of Laws (§ 609), in commenting on article 4, section 1 of the Constitution :

" But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered to pronounce the judgment, nor an inquiry into the right of the State to exercise authority over the parties or the subject-matter. * * * The Constitution did not mean to confer any new power upon the States, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It does not make the judgments of other States domestic judgments to all intents and purposes, but only gave a general validity, faith and credit to them as evidence."

That no such force should be given to a statute of another State when in conflict with the law of our own is well exemplified by the effect the adoption of such a view would have in the case at bar. Under our own law, upon the dissolution of the corporation, creditors could not proceed and enter judgment against it as though it were still alive. And yet if creditors in another State might thus obtain judgments that would be valid in New York, the result would be to deprive our own citizens suing in our own courts of a right or advantage conceded to strangers suing in the courts of a foreign State. It would permit the Legislature and the courts of every other State to override the statutes of New York and the judgments of our Supreme Court.

We think the inquiry, therefore, must be directed, not to what may be the force and effect of an Illinois judgment, but to whether under our statutes the parties in Illinois, after the judgment of dissolution here, could proceed and take judgments against the corporation by default. In *Sturges* v. *Vanderbilt* (73 N. Y. 384), where a statute of New York was sought to be availed of, it was said : " It is not material to refer to the New Jersey statute as to the mode of continuing an action, as that is a matter of practice which must be governed by our own laws, and in the present case there was no attempt to continue the action pursuant to the laws of either State." So far as our own State is concerned, we must regard the law as settled in favor of the view that by the judgment in 1883 dissolving the company, that corporation ceased to exist, and all suits pending

against it, including the suits brought by Scammon in Illinois, abated. No valid judgment thereafter could be rendered against it, and the judgments obtained by default in 1889 are null and void so far as being enforcible in this State, whatever validity they might have as against property or assets of the company in Illinois. In *McCulloch* v. *Norwood* (58 N. Y. 566) it was said: "We feel constrained to differ from the learned court below on the question of the validity of the judgment rendered in the Ohio court against the corporation of which the defendant is receiver. * * * At that time the corporation was not in existence, it having been dissolved by a judgment duly rendered in the Supreme Court of this State. * * * And the defendant having been appointed receiver of its property and effects, the corporation had no longer any legal existence or capacity to be sued, or any property which could be subjected to a judgment to be rendered against it. All authority to appear in the case had been withdrawn from the attorneys who had formerly represented the dissolved corporation." In the case of *People* v. *Knickerbocker Life Ins. Co.* (106 N. Y. 619) suit was pending in Tennessee, and after a judgment against the company, and while upon appeal to the Supreme Court of the United States, and after dissolution, the receiver appeared through counsel on the argument. The judgment was reversed and a new trial ordered, and thereafter a judgment was entered by default against the company. The court there referred to and approved the principle decided in *McCulloch* v. *Norwood* (*supra*), and in addition disposed of the question of the effect of the receiver's appearance upon the appeal as validating the judgment. It was therein held that the dissolution of the company put an end to the action, and at the time of the rendition of the judgment it had no property against which the judgment could be enforced; that the receiver could not be affected by it unless he had, by some action under the direction of the court appointing him, made himself responsible for the final result; that the intervention in the United States Supreme Court did not make him so responsible, as it was simply for the purpose of protecting the assets in his hands from an incumbrance which had no connection with the subject-matter of the litigation, and the reversal of the judgment ended his connection with the action, and the parties litigant were thereby restored to the same position in which they were

prior to its rendition ; that the United States court acquired no jurisdiction over him or over the funds sought to be reached by its adjudication, and that, therefore, the receiver was not estopped by the judgment.

. It is useless to multiply the cases, because by those of *Matter of Norwood* (32 Hun, 197), *Sturges* v. *Vanderbilt* (73 N. Y. 384), *Martine* v. *International Life Ins. Co.* (53 id. 339), and others that might be cited, the same principle has been affirmed, so that, as stated, we must regard the rule as settled that actions pending in the courts of our own or of another State against a domestic corporation are ended by a judgment of dissolution, and unless by authority of the court appointing the receiver he intervenes so that jurisdiction is continued, a valid enforcible judgment against the company or its receiver, or one enforcible against the assets or property within this jurisdiction, cannot be obtained. The reasons for this rule are not hard to find. A court has no more authority to render judgment against an artificial person after dissolution than it has against a natural person after death. Such dissolution, pursuant to the laws of the State creating the corporation, operates as its legal death in any other State in which it may be doing business, and it must be assumed that every person contracts with the corporation with knowledge that the State under whose authority it was created may arrest its franchises and dissolve it and wind up its affairs.

Having reached the conclusion, therefore, that so far as the receiver here and the assets in its hands are concerned, the judgments obtained in Illinois by default after dissolution are null and void, the court below was right in denying the petition requiring the receiver to pay the amount of such judgment.

Order accordingly affirmed, with ten dollars costs and disbursements.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Order affirmed, with ten dollars costs and disbursements.