## THE CITY INSURANCE COMPANY OF PROVIDENCE
## *v.*
## THE COMMERCIAL BANK OF BRISTOL.

1. CORPORATION—*right to sue after it ceases to exist.* It is, no doubt, true, when a corporation surrenders its charter, or ceases to exist by efflux of time, or its charter is declared forfeited by a judicial tribunal of competent jurisdiction, that it can neither sue nor be sued, although the obligation of its contracts survive and may be enforced against any property that belonged to the corporation, which has not passed into the hands of *bona fide* purchasers.

2. SAME—*suspension of business by judicial order no ground for quashing attachment against.* Where real estate belonging to a bank of another State was attached in our courts by a creditor, it was *held*, that a decree of a court of the State where the bank had its place of business, finding

the bank insolvent, appointing a receiver, and restraining it from further transacting business, afforded no ground for quashing the writ of attachment, as the bank was liable to be sued in this State to reach property held by it.

3. COMITY OF STATES. Even if the bank had forfeited its charter under the laws of its State, the obligation of its contracts survived, and its property not in the hands of a *bona fide* purchaser may be subjected to the payment of its debts, by suit commenced by attachment, there being nothing in the comity existing between States rendering it improper on the ground that by the local laws its effects are in the hands of a receiver.

4. INTERPLEADER IN ATTACHMENT. Under the Statute relating to Attachments, the right of a third party to interplead extends to real estate which may be attached.

5. DECREE—*does not operate out of State on title to real estate.* In attachment of real estate of a bank of the State of Rhode Island, it appeared by the pleadings and proof on interpleader, that, under the laws of that State, the courts had declared the bank insolvent, prohibited it from further transacting business, and by decree invested a receiver with the title to all its property: *Held*, that such decree had no effect whatever on the title to the lands situate in this State, and gave the receiver no right to claim them as against the attaching creditor.

6. No doctrine is better settled by authority than that the title to real estate or immovable property can only be affected in the mode recognized by the laws of the State within whose territory it is situated.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This was a suit, brought by attachment, by The City Insurance Company of Providence, R. I., against The Commercial Bank of Bristol, for the collection of a debt. William R. Taylor, the receiver of the bank, appointed as such by the Supreme Court of Rhode Island, appeared and interpleaded, claiming the property as receiver, under the decree, and also moved to quash the writ of attachment. The court found in favor of the party interpleading, and quashed the writ, and the plaintiff appealed.

Messrs. LAWRENCE, WINSTON, CAMPBELL & LAWRENCE, for the appellant.

Mr. MELVILLE W. FULLER, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The point is made, that the attachment writ in this case was improvidently issued, and was properly quashed upon other grounds than those relating to the property itself. The reason assigned is, the defendant corporation was civilly dead before the attachment writ was instituted. The proposition asserted is no doubt true, where a corporation surrenders its charter, or where it ceases to exist by the efflux of time, or where its charter is declared forfeited by a judicial tribunal of competent jurisdiction, it can neither sue nor be sued, although the obligation of its contracts survive, and may be enforced against any property that belonged to the corporation which has not passed into the hands of *bona fide* purchasers. *Mummer* v. *The Potomac Company,* 8 Peters, 284; *Greely* v. *Smith,* 3 Strong, 657.

But the party interpleading here has not made it appear the defendant corporation is, in fact, defunct. It certainly does not appear on the face of the record, so that he could avail of it on motion. It is not averred in any plea filed, this bank, for any reason, had ceased to exist, nor that its charter had been declared forfeited by any judicial tribunal. The decree of the court, offered in evidence, does not purport, even, to declare the franchises of the bank forfeited. The averment is, that the bank is insolvent, and a receiver has been appointed for its effects. The decree of the court finds the alleged insolvency of the bank, but goes no further than to appoint a receiver for its effects, as it was authorized by the laws of Rhode Island to do, and restrained it from "proceeding further in transacting the business thereof." There is no declaration of forfeiture, nor does the law provide for any, as we understand it. For aught that appears, it may be the bank is involved only in temporary difficulty, and when that is removed it may resume business as before. No reason is perceived why an insolvent corporation may not be sued as well as an insolvent natural person, whose effects may be in

the hands of a receiver under the local insolvent laws of another State. That is all that is alleged or proven in regard to this defendant corporation, and we are not advised that it constitutes any sufficient cause for quashing the attachment writ.

But if it be conceded it is proven this bank has forfeited its franchises under the laws of Rhode Island, the obligation of its contracts survives, and this action may be maintained on the ground it is a proceeding against the property of the bank not in the hands of a *bona fide* purchaser, to enforce payment. There is nothing in the comity which exists between States, that makes it improper our courts should afford this remedy, notwithstanding the fact, by the local laws of the State which created this corporation, its effects are in the hands of a receiver.

It is suggested, it is doubtful whether a party under our laws can interplead, where the property attached consists only of real property. There is some obscurity in the section of the statute which is supposed to give the right. The language employed has reference, almost exclusively, to personalty. But the right to interplead in a case where real estate, only, was attached, was recognized by this court in *Williams* v. *Van Meter*, 19 Ill. 293. That decision must be regarded as giving a construction to the statute, which we feel inclined to follow.

The attaching creditor and the debtor in this case are both corporations created by the laws of Rhode Island. The statute of that State provides for putting banks in liquidation, and an equal distribution of the assets. Laws 1869, chap. 270. In August, 1869, the State authorities commenced proceedings against the defendant bank, under that statute, by virtue of which commissioners were appointed to examine its affairs, who afterwards filed a petition alleging the insolvency of the bank, whereupon the court pronounced a decree enjoining the bank from further transacting business, and appointing the interpleading claimant receiver of its effects.

The insurance company was a creditor of the bank at the time these proceedings were had, and subsequently commenced this action in attachment against the property of the bank, situated in this State. The attachment writ was levied upon real estate only, situated in the county of Cook, as the property of the bank, whereupon the receiver interpleaded as owner, under the provisions of our laws in relation to attachments. Rev. Stat. 1845, sec. 21. Accordingly he filed four pleas: first, that he was the owner of the property levied on; second, the same, setting up the fact the bank was in liquidation and he had been appointed receiver; third, a full statement of all the facts, including the proceedings had in the Supreme Court of Rhode Island, and the decree pronounced by the court; and fourth, substantially the same as the third.

A demurrer was overruled as to the second, third and fourth pleas, and issue joined on the first plea. On the trial, the only evidence introduced was the laws of the State of Rhode Island and the record of the Supreme Court in the proceedings had against the bank.

It is apparent the only fact involved in the case is as to the ownership of the property. Indeed, the only inquiry that can be made under the section of the statute that authorizes a party to interplead in an attachment proceeding, is as to the "right of property." The question suggested by counsel, whether a citizen of Rhode Island can obtain a preference over other citizens of that State by levying an attachment on property sequestrated under its insolvent laws to the payment of all creditors alike, does not and can not arise in a proceeding of this character. Such an inquiry has a relation only to the equities between contesting creditors, and it was never contemplated they could be adjusted in a proceeding under our law that permits parties to interplead as to the "right of property." This view of the statute relieves the case of all difficulty, and leaves but a single point for decision, viz: did the proceedings had in the Supreme Court of Rhode

Island pass the title of the bank to the land in controversy to the interpleading claimant?

The principle upon which counsel endeavored to maintain this judgment is, that the property has been sequestrated to the use of all the creditors of the bank by decree of court, and the title thereby became vested in the claimant, as receiver or assignee, by operation of law.

Whatever may be the effect of the decree of court in the State where rendered, under the local laws, it is difficult to comprehend upon what principle it can operate to divest title in real estate in Illinois. The decree must be construed to have this effect, otherwise it can constitute no defense to the action. How can it be said the decree can have any extra-territorial operation, so as to divest one party of the title and confer it upon another? No doctrine is better settled by authority, than that the title to real estate or immovable property can only be affected in the mode recognized by the laws of the State within whose territory it is situated. There are cases which go to the extent of holding that personal chattels, though situated in foreign countries, pass, by operation of law, absolutely to the assignee or receiver appointed under the insolvent law of the State where the parties are domiciled. The cases proceed on the fiction, personal property has no *situs* for any purpose, and if, by any act of the owner, or by operation of the law of his domicil, the title is transferred, it will be valid as between citizens of the same State.

Whatever may be the doctrine on this question as to personal property, it is not possible to maintain it in its application to real property situated in a foreign jurisdiction. Mr. Story concedes that the courts of England and the United States have arrived at opposite conclusions as to the effect of statutable transfers of movable property, under the bankrupt or insolvent laws of the debtor's domicil. But he adds, "all the authorities in both countries, so far as they go, recognize the principle, to its fullest extent, that real estate or immovable property is exclusively subject to the laws of the govern-

23—68th Ill.

ment within whose territory it is situated. Indeed, so firmly is this principle established, that in cases of bankruptcy the real estate of the bankrupt situated in foreign countries is universally admitted not to pass under the assignment, although, as we have seen, there is great diversity of opinion as to movables." Story, Conflict of Laws, sec. 428.

We do not understand that Mr. Wharton, in his work on Conflict of Laws, controverts the exclusive authoritativeness of the *lex rei sitæ*, but only contends a modification has been introduced, which is said to rest upon the position that parties in a contentious proceeding may agree that the issue shall be decided according to a particular law. Wharton's Conflict of Laws, sec. 369.

The author himself expresses his doubts whether this implied acceptance may be extended to include the implied adoption, by two or more litigants, of the law of their common domicil, as determining their title to a thing in another territory. But we infer the author did not intend to apply the doctrine of the text to real property situated in a foreign jurisdiction, for it is added, in noting the exceptions to the modification, "even the express agreement of litigants domiciled in a foreign land can not overcome such registry and other positive laws as are distinctively politic and coercive."

No property other than realty is involved in this litigation, and if it is intended to apply the principles suggested to it, we must be permitted to express our dissent. This court has decided the title to lands situated in another State can not be invalidated by a decision of an inferior court of this State, and whether the title is a nullity must depend on the local laws of that State. *Cooley* v. *Scarlett*, 38 Ill. 316.

If titles could be affected by local laws or decisions of courts of another State, of what avail would be all our registry laws? A party might appear on the record to be the owner of valuable real property, the title to which had been transferred to another by operation of law or a decision of a court of another State. Aside from the question of policy, it is an unanswer-

able objection to the right set up by the interpleading claimant that the laws of Illinois have not provided that title to lands within the limits of the State may be transferred by operation of the laws of a foreign State, or the decision of its courts.   Lands can only be alienated in the mode prescribed by our laws.

The argument has assumed a much wider range than is necessary to the decision of the case, and we do not deem it material to remark upon all the positions taken by counsel. We are satisfied the title to the property attached did not pass to the claimant by reason of anything contained in the laws of Rhode Island, or by the decision of the Supreme Court, offered in evidence.   In can not be said, therefore, the plea of property in the claimant is sustained, and hence the writ of attachment was improperly quashed.

For the reasons indicated, the judgment will be reversed and the cause remanded.

*Judgment reversed.*