## MARY H. THOMPKINS v. J. Q. ADAMS.

ASSIGNMENT *for Benefit of Creditors — Sale of Real Estate — Conflict of Laws.* An insolvent debtor, resident of the state of Illinois, made a general assignment for the benefit of his creditors; the assignment included real estate owned by the insolvent in this state. The assignor, with the approval of the county court of the county in the state of Illinois in which the assignment was made, sold the land in Kansas. *Held*, The purchaser at such a sale got no title, the land not having been sold in accordance with the provisions of an act to regulate voluntary assignments for the benefit of creditors, in force in this state, nor by the order or judgment of any court of the state.

*Error from Sedgwick District Court.*

THE opinion contains a sufficient statement of the facts.

*Hatton & Ruggles*, for plaintiff in error.

*Sluss & Stanley*, for defendant in error.

Opinion by SIMPSON, C.: The material facts are comprised in the following special findings of fact made by the trial court at the February term, 1886:

"1. On the 5th day of April, 1883, P. H. Thompkins executed an instrument in writing whereby he purported to assign

and convey to William G. Randall all his real and personal property for the benefit of his creditors, and which assignment purported to be made under and in pursuance of an act of the legislature of the state of Illinois, entitled 'An act concerning voluntary assignments, and conferring jurisdiction therein upon county courts,' approved March 22, 1877.

"2. At the time of said assignment the said P. H. Thompkins resided and was doing business and had the greater part of the assigned property in Woodford county, in the state of Illinois.

"3. Said William G. Randall did not accept said assignment, or the trust thereby created.

"4. On the 5th day of April, 1883, the said instrument of assignment was filed for record in the office of the recorder of deeds of Woodford county, Illinois.

"5. At the time of the execution and recording said assignment there was no schedule of the property attached to or filed with said assignment, describing the property intending to be assigned. The said assignment contained the statement that the property thereby intended to be assigned was 'fully and particularly enumerated and described in an inventory under oath of said assignor, thereto annexed, marked 'Schedule B,' and made part thereof.'

"6. On the 11th day of April, 1883, there was made and filed in said recorder's office a statement under oath of said P. H. Thompkins of the assets of said assignor, and attached to said assignment, and intended to operate as such 'Schedule B' thereto.

"7. In said statement of assets was contained a description, among others, as follows: N. E. qr. sec. 9, T. 34, R. 2 E., Sumner Co., Kansas; S. E. qr. sec. 9, T. 34, R. 2 E., Sumner Co., Kansas; N. W. qr. sec. 22, T. 28, R. 2 W., Sedgwick Co., Kansas. But the same in no way described any land in section 4, township 34, range 2 east, in said county of Sumner.

"8. On the 12th day of April, 1883, the said P. H. Thompkins signed and acknowledged two quitclaim deeds, in which 'David A. Espey, assignee in trust for the benefit of my creditors,' was named as grantee, one of which said deeds purported to convey to said Espey the northwest quarter of section 22, in township 28 south, range 2 west, in Sedgwick county, Kansas, and one of which purported to convey to said Espey the southeast quarter of section 4 and the northeast quarter of section 9, in township 34 south, of range 2 east, in Sumner county, Kansas. Neither of said deeds was delivered to said Espey, nor accepted by him.

"9. On the 16th day of April, 1883, the said P. H. Thompkins filed said first deed for record in the office of the register of deeds of Sedgwick county, Kansas, and on the 16th day of April, 1883, at one o'clock P. M., filed said second deed for record in the office of the register of deeds of Sumner county, Kansas."

"11. There was no consideration whatever for the execution of either of said quitclaim deeds, and they were both executed for the purpose of preventing the creditors of said Thompkins from levying legal process upon said land until said assignment should be accepted by said Randall, or an assignee should be appointed in his stead by the county court of Woodford county, Illinois.

"12. On the 14th day of April, 1883, the plaintiff commenced this action against the said P. H. Thompkins in this court, in which he obtained personal service upon said Thompkins, and on the same day procured an order of attachment to be issued in said action directed to the sheriff of Sedgwick county, Kansas, which attachment was on the 14th day of April, 1883, duly levied upon the northwest quarter of section 22, in township 28, range 2 west, in Sedgwick county, Kansas; and on said 14th day of April, 1883, said plaintiff procured an order of attachment to be issued in said action directed to the sheriff of Sumner county, Kansas, which attachment was on the 16th day of April, 1883, at 3 o'clock P. M., duly levied on the southeast quarter of section 4, and the northeast quarter of section 9, in township 34, range 2 east, in Sumner county.

"13. At the June term, 1883, of this court, which term began on the 5th day of June, 1883, the plaintiff obtained judgment against said P. H. Thompkins in said action, for the sum of $1,572.80, and an order for the sale of the above-described attached real estate to satisfy the same.

"14. On the 26th day of April, 1883, the county court of Woodford county, Illinois, appointed David A. Espey assignee of said estate of the said P. H. Thompkins in the place of the said William G. Randall, who had failed to accept said assignment; and the said David A. Espey then and there accepted said trust, and qualified as such assignee under the act of the legislature of Illinois, aforesaid.

"15. On the 29th day of June, 1883, the said assignment, and said schedule of assets, and a copy of the order of the county court of Woodford county, Illinois, appointing said David A. Espey assignee thereof, were filed for record, and recorded in the office of the register of deeds of Sedgwick county, Kansas. And on the 17th day of August, 1883, the

same were filed for record, and recorded in the office of the register of deeds of Sumner county, Kansas.

"16. On the 20th day of September, 1883, the said David A. Espey presented to the county court of Woodford county, Illinois, the following petition:

"'STATE OF ILLINOIS, WOODFORD COUNTY, ss.—COUNTY COURT, September Term, 1883.—*In the matter of the assignment of Philip H. Thompkins:* Now comes David A. Espey, assignee in the said matter, by Hopkins & Hammond, his attorneys, and shows to this honorable court, that among other assets of the said estate assigned to and inventoried by him, are the following tracts of land, viz.: Block 14 in Gibson's addition to the town of El Paso, containing about fifteen acres; also the northeast quarter of section number 9, township number 34 north, range number 2 east, in Sumner county, Kansas; also the southeast quarter of the section last aforesaid; also the northwest quarter of section 22, township number 28 north, range 2 west, in Sedgwick county, Kansas. The said tracts of land are all of them seriously incumbered by mortgages, tax liens, attachment suits now pending and undetermined, and the dower right of Mary H. Thompkins, the wife of said assignor, rendered it difficult to sell said land at any adequate price; and further shows that said Mary H. Thompkins has offered to purchase the title vested in him as such assignee upon the following terms, viz.: To give for said first-named tract the sum of seven hundred dollars in cash, and take the same subject to all existing liens and incumbrances; to give for the second and third tracts above named the sum of three hundred dollars, and take the same subject to all incumbrances. To give for the last tract above named the sum of four hundred dollars, and take the same subject to all liens and incumbrances; and further, to give your petitioner a quitclaim deed, releasing all her homestead and dower rights in all other real estate vested in said petitioner by said assignment. And petitioner shows that in its involved condition said property could not be advantageously sold at auction; that he has made diligent effort to dispose of the same at private sale, and has not been able to obtain any better offer than the one above named. He believes it will be for the best interests of the estate to accept said offer.

"'Wherefore, he most respectfully asks the order and direction of this honorable court in said matter.    DAVID A. ESPEY, *Assignee.*'

"17. On the 20th day of September, 1883, the county court of Woodford county, Illinois, made the following order:

"'STATE OF ILLINOIS, WOODFORD COUNTY, ss.—COUNTY COURT, September Term, 1883.—*In the matter of the assignment of Philip H. Thompkins:* This day this matter coming on for further hearing upon the petition of the assignee herein for leave to sell block number 14 in Gibson's addition to the town of El Paso, in the county of Woodford and state of Illinois, also the northeast quarter and the southeast quarter of section number 9, in township 34, range 2, Sumner county, Kansas, also the northwest quarter of section 22, in township number 28, range number 2, in Sedgwick county, Kansas, to Mary H. Thompkins, in consideration of fourteen hundred dollars, and a release of her dower and homestead rights in all other lands belonging to said estate, and the court having heard the proofs and examined the facts in the matter, and finding that in the present involved and incumbered condition of said property it will be for the best interest of the creditors of said estate to accept said offer, it is ordered, adjudged, and decreed that the said David A. Espey, assignee, be and is hereby authorized and directed, upon the receipt

from the said Mary H. Thompkins of fourteen hundred dollars and a deed of quitclaim of all her interest in all the other lands belonging to said estate to him, the said assignee, to execute, acknowledge and deliver to said Mary H. Thompkins a good and sufficient assignee's deed of the aforesaid lands and premises, and thereof make report to this court. W. S. GIBSON, *County Judge*.'

"18. On the 14th day of September, 1883, the said David A. Espey executed and delivered to Mary H. Thompkins, the interpleader herein, a deed of conveyance as follows:

" 'This indenture, made this fourteenth day of September, 1883, between David A. Espey, assignee of Philip H. Thompkins, of the city of El Paso, county of Woodford and state of Illinois, party of the first part, and Mary H. Thompkins, of El Paso, in the county and state aforesaid, party of the second part, witnesseth: That whereas, Philip H. Thompkins, of said El Paso, on the 5th day of April, 1883, executed and delivered, and caused to be recorded in the recorder's office of said Woodford county, his deed of assignment for the benefit of creditors, made in pursuance of the statutes of Illinois, to one William G. Randall, assignee therein named; and whereas, said Randall neglected and failed to qualify as such assignee by filing the inventory and appraisement and giving and filing an assignee's bond, according to the provisions of such statutes, within twenty days after the making and recording of such deed of assignment; wherefore, on the twenty-sixth day of April, 1883, the county court of said Woodford county, by its order and decree, appointed the party of the first part assignee in lieu of said Randall, to execute the powers and provisions of said assignment, and thereupon the party of the first part filed the inventory and appraisement, and gave bonds as required by law and entered upon his duties, and is still acting as such assignee; and whereas, there was among the assets of said Philip H. Thompkins, the legal title of which was vested in the party of the first part by virtue of the said deed of assignment and proceeding, the following-described lands and premises, to wit: Block number fourteen in Gibson's addition to the town of El Paso, in the county of Woodford and state of Illinois, containing fifteen acres more or less; also the northeast quarter of section number nine, township 34 south, range two east, in Sumner county, Kansas; also the southeast quarter of section four, the same township and range last named; also the northwest quarter of section number twenty-two, in township twenty-eight south, range two west, in Sedgwick county, Kansas; and whereas, by the order and decree of said county court, made and entered of record in the matter of said assignment proceeding, on the 27th day of September, 1883, the party of the first part was authorized and directed to accept a proposition made by the party of the second part, to purchase the title of the party of the first part in and to said premises, and to deed and convey the same to the party of the second part upon the payment of fourteen hundred dollars, and the execution and delivery of the deed of Philip H. Thompkins and his wife, the parties of the second part, to all other lands included in said assignment: now, therefore, know all men by these presents, that the party of the first part does hereby remise, release, grant and convey to the party of the second part, her heirs, administrators and assigns forever, all his right, title and interest as such assignee in and to, all and singular, the lands and premises aforesaid, and all the right, title and interest of the said Philip H. Thompkins at the time of his said assignment, and which passed to and vested in his assignee by virtue of his said deed of assignment, and the proceedings thereunder, by virtue of the laws of the state of Illinois

in such cases made and provided, to have and to hold the same to her, her heirs and assigns forever, with all the privileges and appurtenances thereof.

"'Witness my hand and seal, the day and year first above written.
        (Seal.)                              DAVID A. ESPEY,
                          *Assignee of Philip H. Thompkins.*'

"Which deed was duly acknowledged, and on January 4, 1884, was filed for record and recorded in the office of the register of deeds of Sedgwick county, Kansas, and on November 30, 1883, was filed for record and recorded in the office of the register of deeds of Sumner county, Kansas. During all the times above mentioned there was in force in the state of Illinois a statute of said state governing the making and administration of voluntary assignments for the benefit of creditors; said law was embraced in a certain act of the legislature of said state entitled 'An act concerning voluntary assignments, and conferring jurisdiction therein upon county courts;' approved May 22, 1877; in force July 1, 1877. By said act of the legislature, it was provided that the assignee in the execution of assignments should at all times be subject to the order and supervision of the county court of the county wherein the assignment was recorded when in session, or the judge of said court when not in session.

"19. It was also provided in said act that if the assignee named in the assignment should fail to qualify for the period of twenty days after the making thereof, the county judge of the county where the assignment was recorded should appoint some one to execute the trust embraced in the assignment.

"20. It was also provided in said act that the assignee should have full power to dispose of all the estate, real and personal, assigned, but that no sale of real estate should be made except on notice published, as in case of real estate sold on execution, unless the county court should order otherwise.

"21. The principal part of the estate so assigned by the said P. H. Thompkins was situated in Woodford county, Illinois, and the property attached in this action and in controversy herein constituted only a small proportion in value of the property attempted to be assigned by said Thompkins to said Randall.

"22. During all the time above mentioned the plaintiff was a resident of Woodford county, Illinois, and had knowledge of said assignment and of said assignment proceedings, and of the signing of said two quitclaim deeds by said Thompkins; and after said attachments were levied, filed his claim against said Thompkins, being the same sued on in this action,

with said Espey as assignee, and received a dividend thereon of $211 from said Espey.

"23. At the time of the execution of the two quitclaim deeds, the plaintiff herein objected to their delivery to Thompkins for the purpose of being placed on record in the state of Kansas, as Thompkins and Espey proposed."

"CONCLUSIONS OF LAW.

"1. The plaintiff, J. Q. Adams, obtained a lien on the property in controversy, as follows: In the northwest quarter of section 22, township 28, range 2 west, in Sedgwick county, Kansas, on the 14th day of April, 1883; and in the southeast quarter of section 4, and the northeast quarter of section 9, in township 34 south, of range 2 east, in Sumner county, Kansas, on the 16th day of April, 1883, at 3 o'clock P. M.

"2. The quitclaim deeds from Thompkins to Espey did not operate to convey any estate in said land as against the plaintiff, and as between the parties thereto did not take effect until the time of filing them for record.

"3. The estate and title in said land did not pass from P. H. Thompkins, but remained subject to legal process against Thompkins until the appointment of Espey as assignee on the 26th day of April, 1883.

"4. The interest of plaintiff in the property in controversy accrued prior, and was superior, to the interest of Espey under the assignment proceedings.

"5. The county court of Woodford county, Illinois, had no jurisdiction of the land in controversy, nor to order the sale of said land, and the order of said court directing the sale and conveyance of said land, and the conveyance of said land based upon said order, were inoperative to convey any interest in said land as against plaintiff.

"6. The order of the county court of Woodford county, Illinois, did not authorize Espey to convey the southeast quarter of section 4, in township 34, range 2 east, in Sumner county, Kansas, and the conveyance of the same by Espey to Mary H. Thompkins was without authority, and conveyed no title to said tract.

"7. The deed from Espey to Mary H. Thompkins was not sufficient to convey any interest in the property in controversy as against the attachment lien of the plaintiff.

"8. The fact that the plaintiff was and is a resident of the state of Illinois does not preclude him from contesting the effect of the said assignment as a conveyance to the property

in controversy in the courts of this state, to the same extent as if he were a citizen of the state of Kansas.

" 9. The presenting his claim to the assignee and acceptance of a dividend thereon from Espey did not operate to forfeit or release plaintiff's attachment lien upon the property in controversy."

Judgment was rendered against the plaintiff in error, disallowing her interplea, and ordered the attached land to be sold to satisfy the judgment rendered in the action. A motion for a new trial was made and overruled; and to reverse the judgment of the district court sustaining said attachment, the case is brought to this court.

This case is so fruitful in questions, and counsel on both sides are so prolific in discussion, that we have been compelled to devote an unusual length of time to its consideration. Among the questions discussed are the nature, character and classification of that class of instruments known as "general assignments for the benefit of creditors;" whether such an assignment is valid; or valid as to a part of the property assigned, and void as to a part; and if valid as to a part only, whether a creditor can accept under it and not be bound by the whole. Another very important inquiry is as to the effect of such an assignment, executed in the state of Illinois according to the laws thereof, on the real property of the assignor situate in the state of Kansas. There are other important questions incidental to those already stated that it may be necessary to discuss and consider.

There is one question that we think controls this case, and disposes of it so far as the rights of the plaintiff in error are concerned. Vattel lays down as a principle of international law, that immovable property is to be disposed of according to the law of the country in which it is situate. This principle we believe has universally been applied as between the states that form our general government, and it has always been held that real estate situate within one of the states is alone subject to the laws of that state respecting its alienation, distribution, and other disposition. That the legislation of

a state can have no extra-territorial force is fundamental, and in the very nature of things incapable of modification, and unproductive of exceptions. The boundaries of the state in which a law originates mark the limit of its operation, and determine with precision and accuracy the extent of its territorial force, and beyond these boundaries it ceases to exist.

Guided by these fundamental rules, we will examine the legislation of the state of Illinois, to determine whether or not the mode provided thereby for an insolvent to transfer to an assignee for the benefit of his creditors, real estate owned by him in the state of Kansas, conforms to the laws of this state regulating the conveyance of real property. It must be conceded that a resident of the state of Illinois owning real property in the state of Kansas can make a conveyance of it to a purchaser that will pass all the title he possesses, if that conveyance is made conformably to the laws of Kansas. A resident of the state of Illinois who owns real property in Kansas can make a transfer of such real property to an assignee in trust for his creditors, if such a transfer is made in accordance with the laws of Kansas governing the conveyance of real property. A statute of the state of Illinois, entitled "An act concerning voluntary assignments, and conferring jurisdiction therein upon county courts," approved May 22, and taking effect July 1, 1877, provides as follows:

"Every assignment shall be duly acknowledged and recorded in the county where the person or persons making the same shall reside, or where the business in respect to which the same is made has been carried on; and in case said assignment shall embrace lands or any interest therein, then the same shall be recorded in the county or counties in which said land may be situated."

This assignment was made in accordance with the law of the state of Illinois governing such matters. It was signed and acknowledged in these words:

"I, Peter A. Simmons, a notary public in and for said county, in the state aforesaid, do hereby certify that Philip H. Thompkins, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared be-

fore me this day in person, and acknowledged that he signed, sealed and delivered the said instrument as his free and voluntary act and deed, for the uses and purposes therein set forth."

Now this acknowledgment meets all the requirements of §§ 10 and 11 of our statute, relating to conveyances of real estate when acknowledged out of the state. Section 1 of an act to regulate voluntary assignments for the benefit of creditors, of chapter 6, Compiled Laws of 1885, p. 96, provides that every such assignment shall be proved or acknowledged or certified and recorded in the same manner as is prescribed by law in case wherein real estate is conveyed. Attached to this assignment is a schedule embracing a list of personal and real property transferred by it to the assignee, and in this schedule we find this description of real property situate in this state: N.E. ¼ sec. 9, T. 34, R. 2 E., Sumner county, Kansas; S.E. ¼ sec. 9, T. 34, R. 2 E., Sumner county, Kansas; N.W. ¼ sec. 22, T. 28, R. 2 W., Sedgwick county, Kansas. It is true that there is a misdescription as to a part of the land owned by Thompkins in this state in this schedule, but this is not important in the view of the case we are considering. We have now reached this conclusion: that the assignment made by Thompkins in the state of Illinois is not only in conformity to the laws of that state, but if made in this state would be sufficient to pass the title to the assignee under the assignment of the lands owned by him in Kansas. The statute of Illinois contains this provision as to the sale by the assignee of the real estate embraced in the assignment:

"Sec. 11. That any assignee or assignees as aforesaid shall have full power and authority to dispose of all estate, real and personal, assigned, as the debtor or debtors had at the time of the assignment, and to sue for and recover in the name of such assignee or assignees everything belonging to or appertaining to said estate, real or personal, and generally to act and do whatsoever the said debtor or debtors might have done in the premises; but no sale of any real estate belonging to said trust shall be made, only on notice published as in case of sales of real estate on execution, unless the county court shall order and direct otherwise."

Our statute upon that subject provides:

"SEC. 34. The district court, or judge thereof in vacation, shall make an order for the sale of all the real or personal estate conveyed by any deed of assignment, either for cash in hand or upon such reasonable credits as shall appear to such court or judge to be most advantageous to all the parties in interest, and shall, by order, direct the nature of the security to be taken at sales made by assignees under the provisions of this chapter."

We have now to recur to the manner in which the sale of the attached real property was made by the assignee to the plaintiff in error, and see whether or not it was disposed of in accordance with the provisions of our statute, because, as we have seen, this is the law that governs the sale and passes the title. It will be noticed that the Illinois statute gives the assignee an unrestricted power to sell the real estate transferred to him by the assignment, the only power of the county court being to fix the length of notice necessary, if a shorter or longer time is thought desirable by the assignee than the notice prescribed for sales on execution. In this state real estate that is transferred under a general assignment for the benefit of creditors, can only be sold by an order of the district court. It may be possible that the Illinois assignee could apply to the district court of the county in Kansas in which the land is situate, for an order of sale. But be this as it may, it is certain that no such order was applied for or made. The record discloses that this pretended sale from the assignee to the plaintiff in error was made by the consent and with the approval of the county court of Woodford county, state of Illinois. This sale, not having been made in accordance with the law of this state, vests no title in the plaintiff in error. As she takes nothing by this sale, she is not in a position to question the validity of the attachment proceeding. Conceding that the acts of the defendant in error have been such as to make him an assenting party to this assignment, and to estop him from asserting in a proper action the invalidity of this assignment, still we are of opinion that the plaintiff in error not having shown any title to the real estate attached, and not having asserted her

rights as a creditor or otherwise, cannot invoke the aid of such a principle. We are not to be understood as deciding this principle of estoppel as having application in this case; all we do now decide, and all that is necessary to decide to determine the rights of the plaintiff in error to the Kansas land is, that there has been no sale or conveyance to her according to the law of this state regulating such matters. We can rest very confidently on this as being not only fundamental, but in accord with every decided case. (Story, Conflict of Laws, §§ 428, 448, 551, and 555; Burrill on Assignments, § 304; *Williams v. Maus,* 6 Watts, 278; *Osborn v. Adams,* 18 Pick. 245; *City Ins. Co. v. Commercial Bank,* 68 Ill. 348; *Rhawn v. Pearce,* 110 id. 350; *Kelly v. Crapo,* 45 N. Y. 86.)

We desire to restrict this principle in its application to this case to the attempt of the assignee Espey to convey the title to the land in this state to the plaintiff in error. There is some very respectable authority that applies this same rule to the assignment, and holds distinctly that the assignment of a non-resident debtor cannot be allowed to operate on property so as to defeat an attachment of a resident creditor made subsequent to the assignment. (*Fox v. Adams,* 5 Greenl. 245; *Ingraham v. Geyer,* 13 Mass. 146; *Dunlap v. Rogers,* 47 N. H. 281.)

We rest our decision in this case upon the fundamental principle that the assignor can only convey the title to the land in Kansas according to the laws of this state. These require a judicial sale by the order of and under the direction of the district court of the state in whose jurisdiction the land is situate.

We recommend the affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.