A. E. WATSON *et al.* v. HOWARD M. HOLDEN *et al.*

No. 10744.

| 58 | 657 |
|----|-----|
| 82 | 426 |
| f82 | 595 |

1. PARTIES ON ERROR—*defendants below not affected by final judgment to be reviewed, not necessary.* Parties defendant who had no substantial interest in the property in controversy and against whom a final judgment had been rendered, barring them of all interest in the property, long before the trial of the issues between the other parties to the action, which judgment they have never sought to set aside or reverse, are not necessary parties in this court to a proceeding to reverse the judgment rendered on the final trial, where such judgment does not in any manner affect the rights of the absent parties.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS—*validity of, as to land, governed by law of place where land situated.* The force and validity of an instrument purporting to transfer a title to, or interest in, land is determined by the law of the place where the land is situated; and this rule applies with full force to assignments made for the benefit of creditors.

3. ——— *appointment of permanent assignee by judge in another State, has no force as to Kansas lands.* Under the statutes of Kansas, a permanent assignee may be elected by the creditors of the assignor at an election held in the county where the deed of assignment is recorded and a schedule of liabilities filed; or, in case of a failure to elect, an appointment may be made by the district judge of the county or, in case of his absence, by the probate judge: *Held*, that an appointment made by a judge of the Circuit Court of Jackson County, Missouri, in accordance with the laws of that State, under an assignment made and recorded there, has no force or validity as to lands in Kansas.

4. ——— *and such assignee cannot sue ·as such in Kansas courts as to Kansas lands.* A savings bank in Missouri made an assignment for the benefit of creditors to B. and M. Shortly afterwards B. and M. resigned. H. was then appointed, by the judge of the Circuit Court of the county where the assignment was executed, as the successor of B. and M., and duly qualified in accordance with the laws of Missouri. After the assignment, W. and others brought suit in Wyandotte County, Kansas, and attached certain lands in that county to satisfy their claims against the bank. H. thereupon brought suit against the attaching creditors, and other parties who held the title to the land in trust for the bank, to obtain a transfer of the legal title to him and clear it of the attachment liens. *Held*, that H. was not clothed with the power of an assignee as to lands in Kansas and had no standing to maintain the action.

42—58 KAN.

Error from Wyandotte District Court.   Hon. T. P. Anderson, Judge.   Opinion filed November 6, 1897. *Reversed.*

*Mills, Smith & Hobbs, Snyder & West, McGrew, Watson & Watson, J. W. Jenkins, Winfield Freeman, Silas Porter, D. B. Vansyckel, G. W. Littick* and *Angevine & Cubbison*, for plaintiffs in error.

*Warner, Dean, Gibson & McLeod, Miller & Morris, Hutchings & Keplinger*, for H. M. Holden ; *Waggener, Horton & Orr*, for the other defendants in error.

ALLEN, J.   This action was brought, in the Court of Common Pleas of Wyandotte County, by Howard M. Holden against A. E. Watson and numerous other attaching creditors of the Kansas City Safe Deposit and Savings Bank, the Realty Investment Company, the Corbin Investment Company and J. D. Strahan, to obtain a decree for the conveyance to him, by the three last-named defendants, of the title to certain lots in Brighton Hill addition to Kansas City, and to clear it from the attachment liens of the other defendants.   Holden claims to hold the full equitable title to the property as assignee of the Kansas City Safe Deposit and Savings Bank, under a deed of assignment executed by the Savings Bank, July 10, 1893, to Walter J. Bales and W. D. McLeod, and an appointment, by Hon. J. M. Slover, Judge of the Circuit Court of Jackson County, Missouri, of himself as successor of Bales and McLeod, who resigned.

The Kansas City Safe Deposit and Savings Bank was a corporation organized under the laws of Missouri, as a savings bank, and transacted its business at Kansas City, Mo.   It had taken a mortgage on the property in controversy, from the Brighton Hill

Land Company, on which it obtained judgment of foreclosure on September 25, 1891, for a debt then amounting to $90,445. Under this judgment most of the property was sold to the Realty Investment Company, which received a sheriff's deed therefor, May 24, 1892. A few lots were bid in, at the sheriff's sale, by other parties, and afterward conveyed to the Realty Investment Company. The balance were bought in by J. D. Strahan, an agent of the Bank. The Realty Investment Company was a corporation organized by the Bank, which held substantially all its stock. It had no capital except such as the Bank furnished, and was a mere instrumentality of the Savings Bank, created for the purpose of handling its real estate. On this purchase, the Realty Company executed its note to the Bank, secured by the property purchased, for $81,000. Afterward, the Corbin Investment Company was organized by the Bank, for the purpose, as alleged in the petition, of enabling the Bank to better hold, handle, and dispose of such real estate as it possessed, or might be interested in. The stock of this company was also substantially all held by the Bank. A large part of the property in controversy was conveyed by the Realty Company to the Corbin Company, April 1, 1893. The petition alleges that the Savings Bank owned and held 999 out of the thousand shares of the stock of each of the auxiliary corporations, that it furnished all the money and property that went to make up the capital of both corporations, and that all the property bid in by Strahan was taken and held by him as agent, and in trust for the Bank.

The petition in this case was filed on May 8, 1894. Service was made on the defendants the Realty Investment Company, the Corbin Investment Company and J. D. Strahan, by publication. On October 20,

1894, the plaintiff took judgment by default against
the three defendants last named, decreeing that what-
ever title they held to the land in controversy was
held in trust for the Bank, and directing that they
forthwith convey the same to the plaintiff and that
in default of such conveyance the decree should op-
erate as a conveyance.  No appearance was at any
time made in the action by either of these three de-
fendants.  The issues between the plaintiff and the
attaching creditors were tried, and, on September 16,
1895, were determined in favor of the plaintiff.  The
creditors took time to make and serve a case.  The
case-made was prepared by the attaching creditors
but was served on Holden's attorneys only.  It was
never served on the Realty Company, the Corbin Com-
pany, or Strahan.  It was settled and signed by the
Judge of the Court of Common Pleas November 9,
1896.  The attaching creditors have all joined as
plaintiffs in error.  Holden, the Realty Company,
the Corbin Company and Strahan are named as de-
fendants in error.  Separate motions to dismiss are
now submitted on behalf of each of the defendants in
error because of the failure to serve the case-made on
the three defendants last named.  It is urged that the
legal title to the property in controversy is admitted
to have been vested in them, and that they are, there-
fore, indispensable parties to a review of the judg-
ment.

There are two sufficient answers to this contention.
First, it is conceded on all hands that neither of these
parties ever had any substantial interest in the prop-
erty.  Both Holden and the attaching creditors claim
that the Bank was the real party in in-
terest, holding a full equitable title to
the property.  They further claim that
the two auxiliary corporations were mere instrumen-

1. Parties unaf-
fected by judg-
ment not neces-
sary on error.

talities of the Bank. Under this state of the case, it is apparent that the representative of the Bank alone need be brought into the litigation in this court. But a second and complete answer to the contention is, that neither of these three defendants was a party to the final judgment now brought here for review. Their rights were finally concluded by the judgment entered October 20, 1894. To this judgment they took no exception, and they have never sought in any manner to set it aside. More than two years elapsed after its rendition before the case-made was settled. The motions to dismiss are not well grounded.

The case on its merits has been very clearly and ably presented by counsel on both sides. Though the record is long and the field of investigation suggested an interesting one, the questions necessary to be answered are neither numerous nor of great difficulty.

Though the title to the property was vested in the auxiliary corporations and Strahan, the agent of the Bank, before final judgment was entered against them, and the Bank retained in its possession only the mortgage executed to it and the stock of the companies as evidence of its property rights, Holden's claim, as advanced in the petition and maintained throughout the trial, was, that the Bank was at all times prior to the assignment the full equitable owner of all the property. The defendants sought to subject the property to the payment of their claims against the Bank, claiming that the Bank owned the property. For the purpose of this case, under the claims of both parties, the Bank must be treated as holding the full equitable title to the property at all times since the title to it was taken by the auxiliary corporations and Strahan under the foreclosure proceedings. This suit was instituted by Holden, and can only be maintained

by him through the strength of his own title, which
he claims to have derived solely by reason of his hav-
ing succeeded to the rights of the Savings Bank.    Has
the title of the Bank passed to him?

The assignment to Bales and McLeod was, in terms,
a general assignment of all the property of the Bank,
without any specific description, either in the deed
itself or any schedule attached to it, of the property
in controversy.    After general language

2. Assignment
governed by
lex loci rei sitæ.

conveying all the property of the Bank,
the deed contains this provision : "Which
is to be taken by them, the said W. J. Bales and W.
D. McLeod, held and disposed of, in strict accordance
with the laws of Missouri relating to voluntary assign-
ments for the benefit of creditors."    The deed of
assignment was duly recorded in Jackson County, Mis-
souri, on July 23, 1893, and in Wyandotte County,
Kansas, August 19, 1893.    Under the Statutes of Mis-
souri, as construed by the courts of that State, the
deed of assignment vested in the assignee all the title
of the assignor to the property described in the deed,
but did not confer on him the right to recover prop-
erty held by, or conveyed to, others in fraud of the
rights of creditors.    It is conceded that, in Missouri,
an assignee for the benefit of creditors stands in the
shoes of his assignor, and cannot allege the fraud of
the assignor for the purpose of recovering property
fraudulently conveyed by him.    It is admitted that
the course pursued in appointing a successor to Bales
and McLeod was the one authorized by the laws of
Missouri, and that the appointment made by Judge
Slover on August 28, 1893, at his chambers, in vaca-
tion, and the qualification thereunder by Holden, on
September 2, following, by giving the required bond,
substituted Holden as assignee and conferred on him

all the title to the property of the Bank that had passed by the original deed of assignment and that could be affected by an order of a court in Missouri.

The statute of Kansas regulating assignments for the benefit of creditors differs from that of Missouri in one important particular. It requires a schedule of liabilities of the assignor to be filed in the office of the clerk of the district court of the county in which the assignment is recorded, and provides for an election of a permanent assignee by the creditors. If the creditors fail to choose, or if the person chosen refuses to accept, then the judge of the district court, or, in case of his absence, the probate judge of the county, may appoint an assignee. In case the person chosen or appointed be some one other than the original assignee, he is required to turn over all property to the new assignee. Under this statute, it has become the settled law of this State that the assignee stands as the representative of the creditors, as well as of the assignor, and may, for the purpose of protecting the estate and the rights of the creditors, allege the fraud of the assignor in dealing with his property. *Chapin v. Jenkins,* 50 Kan. 385; *Walton v. Eby,* 53 id. 257; *Withrow v. Citizens Bank,* 55 id. 378; *Marshall v. Van DeMark,* 57 id. 304.

It is contended on behalf of the plaintiffs in error that this property was fraudulently placed by the Bank in the name of these auxiliary companies and Strahan; that under the laws of Missouri, where the deed of assignment was executed and where the assignor was domiciled, Holden could not attack the transaction and recover the property, because he would not be permitted to allege the fraud of the assignor; and that he can have no greater rights in Kansas than he would have had in Missouri.

We do not deem it necessary to base our decision on

this ground; but we remark that, notwithstanding the finding of the court in favor of the plaintiff, the transactions of the Bank and these auxiliary companies present a very bad face, and it is extremely doubtful whether the bare statement of the officers of the Bank, who also managed the auxiliary companies, that the transaction was free from all fraudulent purposes and that the scheme was solely devised for the purpose of enabling the Bank to better handle its real estate, can have any weight as against the weighty and substantial facts of the transactions; which are, that these companies were unsubstantial, if not mythical, entities; that they had no property except such as the Bank gave them; yet that the title to this property, valued at many thousand dollars, was placed in the names of these companies and thereby concealed from creditors of the Bank, while, on the other hand, in the case of the Realty Company, the Bank carried its stock and a mortgage on this property as assets, thereby making a fictitious showing on its books. Courts do not hesitate to break through and brush away such figments, and treat that as fraudulent which deceives the creditors and conceals from them the true situation of the debtor's property. Corporations having a bare legal entity are not an efficient shield behind which fraud may lurk. *Kellogg v. Douglas Co. Bank*, ante, p. 43, 48 Pac. Rep. 587. Creditors of this Bank might have had great difficulty in learning all the facts disclosed by this record. An examination of the records of Wyandotte County would have shown this to be the property of the Realty Company, the Corbin Company, and Strahan; and, as to property held by the Corbin Company, the record would have failed to disclose anything indicating that the Bank still retained any lien whatever on it, for it gave no mortgage back.

The only security held by the Bank was the capital stock of the Corbin Company.

Assuming, however, that no fraud is proven, but that the auxiliary companies and Strahan held the legal title to this property for the benefit of the Bank, under an enforceable trust, is Howard M. Holden vested with any title to the property? Whatever may be said with reference to the rights of an assignee in one state to the personal property and choses in action of his assignor in another state, there is no room for controversy on the proposition that transfers of the title to land must be made in accordance with the laws of the *situs*. "The validity and effect of an assignment conveying real property in another state must be determined by the laws of that state, unless otherwise provided by statute." 3 Am. & Eng. Encyc. of Law (2d ed.), 53; Burrill on Assignments (6th ed.), § 277; Wharton's Commentaries on American Law, 299; Story on Conflict of Laws (8th ed.), § 435; *Hutcheson v. Peshine*, 16 N. J. Eq. 167; *Heyer v. Alexander*, 108 Ill. 385; *Gardner v. Commercial National Bank*, 95 id. 298; *Loving v. Pairo*, 10 Iowa, 282, 77 Am. Dec. 108; *Munson v. Frazer*, 73 Iowa, 177; *Osborn v. Adams*, 18 Pick. 245; *Rogers v. Allen*, 3 Ohio, 488.

Our statute makes full provision for the disposition of estates assigned for the benefit of creditors, and, whatever may be claimed with reference to the rights of a foreign assignee to chattels in this State, his right to realty must be determined under our statute. The most that can be claimed by the plaintiff is, that the deed of assignment conveyed to Bales and McLeod just the same interest in the Kansas lands that would have been conveyed to them if the assignor had been domiciled here. In order to comply with our statutes, it was necessary

*3. Appointment by foreign judge of no force.*

*4. Foreign appointed assignee cannot sue.*

that a schedule of liabilities be filed in the office of the clerk of the district court of the county where the assignment was recorded. The creditors then had a right to elect a permanent assignee. In default of such election the district court might appoint. None of these things were ever done. The original assignees, until an election or appointment, can exercise no powers thereunder except merely to preserve the property coming into their hands. They are mere custodians; nothing more. In this State there would have been no need of a resignation by Bales and McLeod, for they would have been superseded by the permanent assignee elected or appointed as the statute provides. The only step taken in the direction of compliance with the laws of this State governing such assignments, was the recording of it in Wyandotte County. It may be that a schedule of liabilities might have been filed in the office of the district clerk of that county, and that the election of an assignee would have been then authorized. notwithstanding the fact that the assignment was made in another state. If Holden had been elected by the creditors at such an election, it may well be that he might have executed the trust as to all property situated in this State, including the lands in controversy. But the Circuit Court of Missouri, or its judge, could not make an order transferring from Bales and McLeod whatever title to the Kansas land passed to them by virtue of the deed of assignment. Such a transfer could only be made in accordance with the statutes of this State. A sale could be made only under an order of a court of this State having jurisdiction of the assignment. Gen. Stat. 1889, ¶ 375; *Tompkins v. Adams*, 41 Kan. 38.

Notwithstanding the fact that the plaintiff brought his suit to recover the title to the real estate and clear it of incumbrances, counsel seek to avoid this well-

established rule by claiming that the interest of the Bank was personalty, evidenced by notes, mortgages, and corporate stocks. Nothing can be built on this claim, for the matter in controversy here is realty; the equitable interest of the Bank which was subject to attachment for its debts. *Shanks v. Simon*, 57 Kan. 385. Whether an assignee deriving his authority solely under a foreign assignment would have any greater rights to chattels in this State, as against resident attaching creditors, we express no opinion.

It is clear that the appointment of Holden by Judge Slover neither passed any title to the lands in controversy to him, nor vested in him the trust created by the deed of assignment so far as the same relates to realty in Kansas. Whatever may be said in support of the proposition that equity never allows a trust to fall for want of a trustee, as to the property in controversy Holden is a mere volunteer without any rights that he can assert here. His action, under the statement in his petition, must fail. The court erred in rendering the judgment in his favor; and it must be reversed, and the cause remanded with directions to enter judgment on the pleadings in favor of the attaching creditors for costs.