No. 44,525

B. L. MEADOR, *Appellant,* v. LARNED FEED LOT, INC., a Kansas Corporation, *Appellee.*

(416 P. 2d 788)

Opinion filed July 14, 1966.

*Morgan Wright,* of Larned, argued the cause and was on the briefs for the appellant.

*Glee S. Smith,* of Larned, argued the cause, and *Donald L. Burnett,* of Larned, was with him on the briefs for the appellee.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment dismissing a pleading, designated as a supplemental petition, for the reason the claim was barred by the statute of limitations.

Because of the disposition of the case in the court below the facts must be gleaned from the allegations of the supplemental petition.

At all times material to this controversy Jack Doll was president of the Larned Feed Lots, Inc. On September 8, 1961, the Pay Way Feed Mills, Inc. instituted an action against Jack Doll, solely and individually, seeking judgment in the amount of $6,845.07 based upon a series of promissory notes executed by, and a dealer account contracted by, Jack Doll individually.

On September 15, 1961, B. L. Meador, the plaintiff, loaned the sum of $7,000.00 to Jack Doll for the specific purpose of paying his indebtedness to the Pay Way Feed Mills, Inc., and the money was used for such purpose.

On or about May 1, 1962, the Larned Feed Lots, Inc., by Jack Doll, its president, conveyed to Howard Barstow and Edna B. Doll, as trustees, all of the personal property of the corporation. On May 11, 1962, a similar conveyance was made of 80 acres of land subject to exceptions recited. Also, on May 11, Jack Doll and his wife transferred to the same trustees a one-half mineral interest

in and under the 80 acres mentioned. The conveyances in all three instruments were as follows:

". . . *IN TRUST*, that is to say, *for the use and benefit of* Jack Stanton Doll, Margaret Crahan, Lucille D. Wise, and Wayne Doll, *stockholders of Larned Feed Lot, Inc.*, a Kansas corporation, with full power and right to sell, dispose or by any means incumber or alienate the above described property at the sole discretion of the TRUSTEES;

"Upon the sale or alienation of said property, and after payment of existing obligations of Larned Feed Lot, Inc., in the amount of $39,000.00, to apportion the balance of the proceeds from such sale as follows: Jack Stanton Doll 18/33rds, Margaret Crahan 5/33rds, Lucille D. Wise 5/33rds, and Wayne Doll 4/33rds; that this trust shall continue and be in full force and effect until such time as the above described property has been disposed of and the proceeds have been distributed, as hereinabove set out, but in no case to exceed Twelve (12) years from the date of execution of this instrument: that said trustees are to serve without bond in the premises." (Emphasis ours.)

Subsequently, the date is not given, the trustees sold on contract the properties conveyed to them for $55,000.00 and held such contract as security for the unpaid balance.

In January, 1965, the plaintiff, B. L. Meador, brought on action against Jack Doll to recover the $7,000.00 advanced to him.

It is alleged in the supplemental petition that in taking the deposition of Jack Doll, plaintiff learned that:

"(a) Plaintiff's check in the amount of $7,000.00 advancing the funds loaned and on which the word 'loan' had been written at the time of its issuance had been deposited, following the instructions of Jack Doll, to the credit of the checking account of Larned Feed Lot, Inc., with The American State Bank Of Great Bend, Kansas;

"(b) On or about September 12, 1961, the defendant, Jack Doll, issued and delivered to Pay Way Feed Mills, Inc., a check drawn upon the corporate checking account of Larned Feed Lot, Inc. with The American State Bank Of Great Bend, Kansas, payable to Pay Way Feed Mills, Inc., in the amount of $6,845.07 (Six Thousand Eight Hundred Forty-five and 07/100 Dollars), signed by Jack Doll for and on behalf of Larned Feed Lot, Inc., as its President."

Plaintiff further alleges that the indebtedness of Pay Way Feed Mills, Inc., was the primary obligation of Larned Feed Lot, Inc., and it was indebted to plaintiff for money had and received. The prayer in the supplemental petition was for judgment against the Larned Feed Lot, Inc.

The Larned Feed Lot, Inc. filed a motion to dismiss the supplemental petition on the ground that if any claim did exist it occurred more than three years prior to the filing of the supplemental peti-

tion and the action was barred by the statute of limitations, K. S. A. 60-512.

The trial court concluded that the alleged cause of action was barred by the statute of limitations and dismissed the supplemental petition.

The plaintiff has appealed.

The appellant contended in the court below and contends here, *first,* that the conveyances in trust constituted an assignment for the benefit of creditors, and *second,* such assignment is an express trust and until the trust is repudiated by the trustees or terminated the statute of limitations is suspended as to the beneficiaries or creditors.

We will first consider whether the conveyances in trust were for the benefit of creditors within the contemplation of G. S. 1949, 60-1301 to 60-1346, thus constituting an express trust. The statute was repealed by the new code effective January 1, 1964, but was in full force and effect at the time of the execution of the trust instruments.

We have said that in determining whether an instrument is an assignment for the benefit of creditors under the statute providing for such voluntary assignments, the test is whether the instrument under consideration assigned the property of an insolvent assignor to any person in trust for the creditors. (*Woodard, Trustee, v. Morrissey,* 115 Kan. 511, 223 Pac. 306.)

It does not appear that the trust instrument was for the benefit of creditors. The trust was "for the use and benefit of . . . stockholders of Larned Feed Lot, Inc., . . ." The payment of the "existing obligations" was only incidental to the main purpose which was the liquidation of the corporation for the benefit of the stockholders.

It was known at the time of the execution of the trust instruments that the corporation was solvent. Provision was made for distribution to stockholders. Solvency is now an established fact—the sale price was much in excess of the obligations to creditors. In *Higby v. Ayres,* 14 Kan. 331, we stated:

". . . It would seem, from another provision of the deed of assignment, that the assignor contemplated that there would be a surplus of his estate left after paying all his debts, and there was no evidence introduced that would tend to show otherwise. Now, it is generally fraudulent for a person who can pay all his debts to make an assignment. *Seibert v. Thompson,* 8 Kan. 69; Burrill, Assignm. 190. All assignments in trust for creditors tend to hinder and delay such creditors, and cannot, as a rule, be sustained unless the assignor is insolvent. . . ." (p. 340.)

An assignment by a solvent corporation which tends to hinder and delay creditors is not protected by the provisions of the voluntary assignment statute. The trust instruments before us for consideration provided that the trust could remain in effect for a period of twelve years and the payment to creditors thus delayed. The statute provides for sale of the property under the order and supervision of the district court. The provisions of an assignment for the benefit of creditors which are inconsistent with the statute are void. (*Thompkins v. Adams*, 41 Kan. 38, 20 Pac. 530; *Brigham v. Jones*, 48 Kan. 162, 30 Pac. 113; *Watson v. Holden*, 58 Kan. 657, 50 Pac. 883.) The cases cited are old because the statute providing for voluntary assignment for the benefit of creditors has received very little attention since the advent of the federal bankruptcy act making such assignment an act of bankruptcy.

The supplemental petition disclosed no attempt to comply with the provisions of the statute for voluntary assignments. The appellant did not present his alleged claim to the trustees for adjustment and allowance as required by G. S. 1949, 60-1321. In fact, neither the appellant nor the trustees appear to have had any inkling of the alleged claim until some three years after the trust instrument was executed.

It would serve no useful purpose to point out other inconsistencies between the provisions of the trust instruments, the conduct of the parties and the provisions of the statute providing for voluntary assignment for the benefit of creditors.

The creditors may abide by the provisions of the trust instrument if they so elect. However, we are forced to conclude that the trust instruments were for the benefit of the stockholders rather than the creditors. The provisions of the instruments are not such as were contemplated by G. S. 1949, 60-1301, *et seq*. They cannot be enforced against an unwilling creditor and furnish no protection against the running of the statute of limitations.

The judgment is affirmed.

APPROVED BY THE COURT.