JOHN KELLY, Sheriff, etc., Appellant, *v.* WILLIAM A. CRAPO and others, Respondents.

As a general rule, personal property has no locality, but follows, as to its disposition and transfer, the law of the domicil of the owner. A voluntary conveyance, therefore, valid under the laws of the State where the owner resides, will operate to transfer it wherever situated. But a statutory transfer, in proceedings under State bankrupt and insolvent acts, *in invitum*, can affect only such property as is actually situated within the territory of such State, and has, *proprio vigore*, no force beyond its limits.

In this State, a title acquired under foreign bankrupt or insolvent pro-
ceedings will not prevail over the lien of creditors attaching under our
own laws property found here.

The national territory and its laws are extended, by a legal fiction, to its
vessels on the high seas; but no such principle is applicable to the laws or
territory of a State.

No rule of comity requires our courts to subordinate the claims of our
own citizens, under process provided by our own laws, to the title derived
from statutory transfers in other States.

Accordingly, where, in a suit commenced in this State, against foreign
debtors, citizens of Massachusetts, a warrant of attachment had been
issued, and, upon the arrival of a seagoing vessel at the port of New York,
such debtors' interest in the ship was seized by the plaintiff, as sheriff,
under such attachment, and the defendants claimed as assignees of such
debtors, appointed under the insolvency laws of Massachusetts prior to
the issuing of the warrant, — *Held*, that the lien acquired by the levy
must prevail over the title of such assignees; and this, although, at the
time of the assignment, the vessel was not within our territory, but in the
Pacific ocean.

(First argued, January, 1870; re-argument ordered, June, 1870: removed
into this court by order, and here argued February 1, 1871, and decided
February 27, 1871.)

APPEAL from a judgment of the General Term of the
Supreme Court in the first district for the defendants, upon a
verdict taken at the Circuit for the plaintiff, subject to their
opinion.

The trial was had before Judge GOULD, and a jury, in 1863.
The controversy is between the plaintiff, as sheriff of New
York, claiming under an attachment by him, at the suit of a
New York creditor, upon the ship Arctic, and the defendants,
Crapo and others, as assignees appointed under the insolvent
laws of Massachusetts. On the 24th of April, 1861, Edward
Mott Robinson, residing in New York, commenced an action
in this court against Gibbs, Jenney, and Allen, to recover the
sum of $6,004.06, being the amount due upon their two
promissory notes, dated at Fairhaven, Massachusetts, on the
20th day of June, 1860, and the 3d day of September, 1860,
respectively, each for $3,000, at five months from date, and
being made by Gibbs and Jenney, and indorsed by Allen;
Gibbs, Jenney, and Allen, all reside in Massachusetts, and on

that ground, upon the usual affidavit and undertaking, a warrant of attachment was issued to the plaintiff, as sheriff of the county, against their property, the proceedings being in all respects conformable to the provisions of the Code in such cases.

On the 30th of April, 1861, the ship Arctic arrived at New York direct from the Pacific ocean, and the plaintiff on that day seized her in the harbor, and under the warrant attached one undivided half of her, as being the property of Gibbs, Jenney and Allen. On the 10th of June, the defendants, Crapo, and others, claiming to be themselves the owners of the property attached, made application as provided by the Revised Statutes in such cases, for an appraisement of its value. It was accordingly appraised at $3,000, and the vessel was released from custody, and delivered to the claimants upon their executing to the sheriff, with the defendants, Williams and Minturn, as sureties, the bond required by the statute, conditioned that in a suit to be brought on said bond, the claimants would establish that they were the owners of the share of the vessel attached at the time of its seizure, and in case of their failure to do so, that they would pay to the sheriff the amount of the valuation, with interest from the date of the bond. The present action is upon this bond. The attachment was never set aside or discharged, and Robinson, the attaching creditor, proceeding in the original action, recovered judgment for the whole amount claimed against Gibbs, Jenney, and Allen, upon which execution was issued, which remains in the hands of the plaintiff wholly unsatisfied.

The defendants, who claim the property attached, are the duly appointed assignees in solvency in Massachusetts, holding assignments from the judge of the Insolvent Court there, executed respectively, on the 12th of February, and 6th of March, and purporting to assign to them all the estate, real and personal, of the said Gibbs, Jenney, and Allen, who are admitted to have been, at the time of the taking of the proceedings in insolvency, owners of the property attached.

The vessel belonged to the port of Fairhaven, in Massachusetts, and was there registered, as to one-half, in their names. No assignment was made by the insolvents themselves.

On the 12th of November, 1860, the Arctic was at Honolulu, in the Sandwich Islands, under charter to the American Guano Company of New York, to proceed from Honolulu to Baker's and Howland's islands, in the Pacific, and there receive on board a cargo of guano, and transport the same to New York; and on that day, or soon thereafter, she sailed from that port for Baker's and Howland's islands, in the Pacific, for a cargo, and thence on the 18th of January, 1861, for New York, where she arrived as before stated, on the 30th of April, and was then attached.

The assignees never had possession until after the attachment, and on the 2d of May, hearing that she had arrived, came from New Bedford to New York, and finding her in the custody of the plaintiff, obtained possession of her by giving the bond on which this action is brought.

At the trial, the court ordered a verdict for the plaintiff, subject to the opinion of the court at General Term. But the General Term gave judgment for the defendant and the plaintiff appeals to this court.

*Joseph H. Choate*, for the appellant, insisted that the attaching creditor was a citizen of the State of New York, and that his lien acquired by attachment is superior to that of assignees. (Story Conf. Law, § 48; Vattel Lib. 1, Ch. 19, § 213; *Holmes* v. *Remsen*, 20 Johns., 229; *Abrahams* v. *Plestoro*, 3 Wend., 538; *Hunt* v. *Johnson*, 23 Wend., 87; *Mosselman* v. *Caen*, 34 Barb., 66; *Olyphant* v. *Atwood*, 4 Bosw., 469; *Willetts* v. *Waite*, 25 N. Y., 577; *Clark* v. *Booth*, 17 How. U. S., 322; *Ogden* v. *Saunders*, 12 Wheat., 219; *Harrison* v. *Sterry*, 5 Cranch, 289; *Milne* v. *Morton*, 6 Binn., 353.) That principles of comity did not require his lien to yield to the claim of assignees. (Wheaton's Intern. Law, Dana's ed., §§ 79, 80; Story Conf. Law, § 414; id., § 512; id., §§ 519–521;

*Campbell* v. *Toucey*, 7 Cow., 64; *Gulick* v. *Gulick*, 33 Barb., 92; *Orcott* v. *Orms*, 3 Paige, 459.)

*William Stanley*, for the respondents, insisted that the "Arctic" was itself a part of the territory of Massachusetts, and therefore passed under assignment. (1 Kent's Com., p. 26; Wheaton on Int., Law, Dana's ed., § 106; 10 Wheaton, 66; *Hoyt* v. *The Commissioners of Taxes*, 23 N. Y., 224; *Plestoro* v. *Abraham*, 1 Paige, 237; *Perrie Gassies* v. *Jean Gassies Ballon*, 6 Pet., 761; *Moore* v. *Willett*, 35 Barb., 653; *Thuret* v. *Jenkins*, 7 Martin, 318.) That principles of comity required court to sustain assignees' title. (Story Conf. Law, §§ 29–38; *Parsons* v. *Lyman*, 20 N. Y., 112; *Bank of Augusta* v. *Earle*, 13 Pet.)

CHURCH, Ch. J. As a general rule personal property has no locality, but follows, as to its disposition and transfer, the law of the domicil of the owner. Hence a voluntary conveyance, valid according to the laws of the State where the owner resides, will in general operate to transfer such property wherever it may be situated, whilst a conveyance by operation of law, in proceedings under bankrupt and insolvent acts *in invitum*, can affect only such property as is actually situated within the territory of the State or country where the law is enacted. The law of a State has no force, *proprio vigore*, beyond its territorial limits. (Story's Conflict, §§ 410, 411.)

The defendants claim as assignees in proceedings instituted under the insolvent laws of Massachusetts against residents of that State, and the plaintiff, by virtue of an attachment issued according to the laws of this State in favor of one of its citizens. Although at one time a subject of controversy in the courts, it has become the fixed and settled doctrine of this State, and of nearly all of the States of the Union, that a title acquired under foreign bankrupt or insolvent proceedings will not prevail against the rights of attaching creditors under the laws of the State where the property

is actually situated, and it is quite unnecessary to review the authorities or the history of the decisions on that subject. (*Holmes* v. *Remsen*, 20 J. R., 229; *Abrahams* v. *Plestoro*, 3 Wend., 538; *Hoyt* v. *Thompson*, 1 Seld., 320; *Willets* v. *Waite*, 25 N. Y., 577; *Zipcey* v. *Thompson*, 1 Gray, 243; *Clarke* v. *Booth*, 17 How. U. S., 377; *Harrison* v. *Sterry*, 5 Cranch, 302; *Blake* v. *Williams*, 6 Pick., 303·; *Lanfear* v. *Sumner*, 17 Mass., 110.)

The necessity of a personal assignment to convey property out of the State seems also to have been recognized by the Massachusetts statute, under which these proceedings were instituted, which provides that the debtor, when required, shall make an assignment confirming the assignment authorized by the statute, for the purpose of " enabling the assignees to demand, recover and receive all the estate and effects assigned as aforesaid, *especially such part thereof, if any, as may be without this commonwealth;*" but no such assignment was made in this case.

It was conceded on the argument by the counsel for the defendants that, if the Arctic had been within this State at the time of the assignment, the latter would not have operated to transfer the title according to the principles before referred to, which have been so frequently recognized and settled by the courts of this and other States; but it is insisted that because the vessel was not actually within this State, but was on the high seas at the time, the recognized doctrine on that subject had no application.

· To determine the legal effect of this circumstance is the precise question in this case. We have not been referred to any authority upon the precise point involved, nor am I aware that it has ever been decided.

In *Moore* v. *Willett* (35 Barb., 603), the assignment made in North Carolina was voluntary, and was therefore properly held good to transfer the title to a vessel at sea against an execution levied upon her arrival in this State. In *Thuret* v. *Jenkins* (7 Martin, 318), the vessel was transferred by her owner here, and this was held valid against subsequent attach-

ing creditors in New Orleans. Both cases are distinguished from this by the material and controlling circumstance that the transfers were made by the owner himself, and not by operation of law. The case of *Hoyt* v. *Thompson* (23 N. Y., 224) has no application upon this point. There the question was whether personal property owned here, but actually situated in other States and employed therein in business or otherwise, is taxable to the owner here, under our statute subjecting all real and personal property *within this State* to be taxed. COMSTOCK, Ch. J., delivered a very able and elaborate opinion, which was concurred in by the court, holding that such property was not taxable in this State, first, on the construction of the statute itself, and second, because such property was taxable in the States where it was situated, and to impose taxation here also would subject it to double taxation; and in illustrating and qualifying this last position, he used the paragraph cited, that a ship at sea having no *situs* elsewhere would be taxable to the owner here. The remark was entirely correct and appropriate to the point being illustrated; but it has no force, as an authority, that a ship thus situated may be affected by proceedings *in rem* under insolvent laws of a State. The owners of the Arctic could have transferred a good title by a personal conveyance, which would have been respected in this State. In that event the fiction of law that the *situs* of personal property has relation to the domicil of the owner would have applied, but this rule has no application when the title is transferred by mere operation of law, which has no effect beyond the limits of the State.

"The law operates, if at all, *in rem*, and the State by whose legislation it is enacted having no jurisdiction over property without its territorial limits, it is entirely inoperative in respect to it." (25 N. Y., 584.)

The principles of international law, and the established rules of comity, are invoked and strenuously urged to take this case out of the general rule. It is admitted that the vessel was without the territorial limits of Massachusetts, in fact; but it is said that every vessel upon the high seas is subject to

the jurisdiction of, and is a part of the territory of the nation to which it belongs, and that the ownership and registering of the Arctic in that State enables the defendants to claim a constructive possession therein.

I cannot assent to this position. The jurisdiction referred to has been vested in the United States government, and is exercised for certain purposes of protection to ship and cargo, which the owner may, in various ways, receive the benefit of, but over which he has no control.

Offences committed upon vessels at sea are punishable exclusively in the federal courts, and, for that purpose, such vessels are deemed a part of the national territory.

Neither the domicil of the owner, nor the fact that a vessel sailed from a port within one of the States, enables that State to appropriate to itself the national character of the vessel, nor the protection which the flag of the country affords.

The national territory and its laws are extended, by a legal fiction, to its vessels at sea, from public necessity; but no particular locality is thus extended, nor is the operation of State laws thereby enlarged.

It is said, that the national character of the vessel does not prevent the control of the State over her as property. Certainly not, as it respects her owner, when within her jurisdiction, or as it respects the vessel, while within her territory; but all control and authority over her by State laws, beyond those limits, ceases.

Laws are of no force without power to execute them. A State possesses no power to execute its laws upon the high seas; and any attempt to do so would bring its authority in conflict with that of the United States. The vessel was as much beyond the reach of the process of a Massachusetts court, as she was beyond the reach of the New York attachment. Both were powerless to affect her in the Pacific ocean, while each had equal rights and interests in her, on account of her national character.

But the court below placed its decision for the defendants mainly upon the rule of comity. The learned judge who

delivered the opinion laid down the general principle, that "the line of demarcation in relation to this subject should be between property actually within our limits, at the time of the assignment in insolvency or bankruptcy, and property not actually within our limits." With great respect, I feel constrained to differ with him. I can find no authority, nor can I discover any reason, for such a distinction. Whether the vessel arrived the day before or the day after the assignment, is quite immaterial for the purposes of this question; and yet this rule would give the attachment preference in the former case, and the assignment in the latter. The important question is, not whether the vessel was within this State, at the time of the assignment, but whether it was without the State of Massachusetts, so as to be unaffected by the assignment.

The rule of comity is founded upon considerations of public utility and necessity, and should be observed in allowing the operation of foreign laws, and especially those of our sister States, whenever it can be done without prejudicing the rights of the State or its citizens. (Wheat. Int. Law, §§ 79, 80.) " In modern times, all States have adopted as a principle the application within those territories of foreign laws, subject, however, to the restrictions which the rights of sovereignty and interests of their own subjects require." (*Id.*)

Judge Story, in his Conflict of Laws, lays down the American doctrine in relation to assignments under bankrupt proceedings, as follows: " National comity requires us to give effect to such assignments only so far as may be done without impairing the remedies or lessening the securities which our laws have provided for our citizens." (§ 344.)

The well-established principle is, that the rule of comity ought not to prevail against the interests of our own citizens, and that we ought not to deny them the full benefit of all the remedies and securities provided by our laws.

There is no significance affecting this principle in the circumstance that the vessel was not within the State at the time of the assignment. When she arrived within our territory, she was free from any lien or claim, and, as we have

seen, was entirely unaffected by the insolvent proceedings instituted in Massachusetts.

The creditor here availed himself of the ordinary process of our courts, and by superior diligence acquired a lien, according to our laws, prior in time to the claim of the assignees; and the simple question is, whether we ought to deprive him of the advantages thus secured, and of the benefit of our laws, subordinate his rights to those of foreign creditors, and subject him to the inconvenience and expense of seeking dividends in a foreign State. There is no rule of comity requiring such complaisance. If it was a mere question of courtesy, we should promptly require the creditor to yield his claim, and render suitable indemnity for the delay and inconvenience which he had occasioned; but the question is one of far graver import. It involves the duty which a sovereign State, in the proper exercise of its powers, is required to discharge for the protection of the rights and interests of its own citizens.

It is suggested, as a possible reason for the distinction recognized by the court below, that credit might be supposed to be given in consequence of property actually situated here, while no such supposition could be indulged when not thus situated; but the question is one of protection to legally acquired rights under our laws. The rule adopted must be applicable to all similar cases, and should not depend upon abstract equities arising out of the circumstances under which the debt was contracted. Such considerations would tend to interminable confusion and litigation, and lead to arbitrary distinctions of difficult if not impracticable application; because, if the rule adopted by the court below rests on the reason suggested, then, if the reason does not exist in a given case, equity and fairness would demand a modification of it. Judge Story says, that "all comity of this sort must be built up, in a great measure, on the doctrine of reciprocity." The authorities before cited, and the cases therein referred to, will show that the rule in favor of the attaching creditor has generally been adopted by other States, as well as this,

and that, unless uniformity can in some way be attained, it is the only just or practicable mode of dealing with the question.

In *Holmes* v. *Remsen* (20 J. R., 262), PLATT, J., in a very able opinion, which, although not expressly assented to by his associates at the time, has been adopted by the courts in this and other States, says: "If our citizens conduct themselves with reference to our own laws, in regard to the property of their debtors, *found within our jurisdiction*, it seems reasonable that they should reap the fruits which those laws promise them. This forms a standard of private rights which all can easily understand and conform to, but if an attachment against an absent debtor's property *found here*, may be superceded by a statutory assignment previously made at *St. Petersburg or Calcutta*, where the debtor resides, the remedy offered by our statute becomes illusory and hazardous. Let each government in such cases, sequester, and distribute the funds within its jurisdiction, and the general result will be favorable to the interests of creditors, and to the harmony of nations."

The refusal to apply the rule of comity has been extended to cases of voluntary transfers by an owner in our State, of property in another, where the transfer, although valid in the State where the owner resided, was contrary to the law or policy of the State where the property was found. *Ingraham* v. *Geyer* (13 Mass., 146), was the case of a voluntary assignment of a citizen of Pennsylvania, containing provisions not permitted by the laws of Massachusetts. PARKER, C. J., after commenting upon the question, whether the assignment was valid by the laws of Pennsylvania, says: "But supposing the assignment to have legal effect in the State of Pennsylvania, so as to bind the creditors in that State, it does not follow that it is to be received here to the prejudice of creditors who are our own citizens. It is not required by the comity of nations."

In *Zipcey* v. *Thompson* (1 Gray, 243), an assignment was made by debtors residing in New York, for the benefit of creditors giving preferences, which although valid in that

State, was prohibited in Massachusetts. In a contest for property in the latter State, attaching creditors there prevailed, although the assignment was made before the "trustee process" was served. THOMAS, J., said : "The law of New York *proprio vigore*, cannot obtain here. It derives its effect only from the rule of comity, and that rule refuses to give force to laws of other States, which directly conflict with the policy of our own."

· These decisions are cited not for the purpose of questioning their correctness, but to demonstrate that we are not likely to extend the rule in this case, beyond that which has been adopted by other States upon this subject.

It would be in the highest degree unjust to our own citizens, and humiliating to the State, if we failed to accord to them, that security and protection which is afforded by other States to their citizens.

The original question of preference between foreign assignees and attaching creditors, we have regarded as too firmly settled to be open for review.

We feel constrained to determine, both upon principle and authority, that personal property which has never been within the operation of proceedings under insolvent laws of a foreign State is liable to be attached by creditors here, although such property was not actually within this State at the time the foreign assignment was made, and that a vessel on the high seas, is not within the territory of any one State, so as to be affected by its local laws, or proceedings, *in rem* instituted under them.

The judgment must be reversed.

All the judges concurring, judgment reversed.