James Drury and Others, Plaintiffs, *v.* Henry L. Doherty, as Survivor of Frank W. Frueauff and Henry L. Doherty, Together Constituting the Firm of Henry L. Doherty & Company, and Others, Defendants.

Supreme Court, New York County, May 8, 1926.

Corporations — receivers — application by domiciliary receiver of Delaware corporation for order turning over to him fund in hands of New York receivers — title of domiciliary receiver not questioned in this State though eighty-four per cent of creditors and similar percentage of stockholders are residents of this State — receivers holding proceeds of litigation in which corporation was involved in this State should be designated ancillary receivers for protection of New York creditors — fact that domiciliary receiver is willing to give bond to insure equitable treatment of New York creditors does not warrant turning over fund to him — said receiver may intervene in proceedings before referee to determine validity of claims — legal expenses of domiciliary receiver are proper charge against fund in hands of New York receivers — allowance previously granted attorney for plaintiffs will not be revoked — payment of New York creditors.

The title of a receiver appointed by the Court of Chancery of the State of Delaware, of a Delaware corporation, will not be questioned in this State although eighty-four per cent of the creditors and a similar percentage of the stockholders are residents of this State, but for the purposes of dissolution and distribution among stockholders of any surplus belonging to the corporation, the domiciliary receivers' rights are undoubtedly paramount.

Since it is apparent that nearly all of the stockholders and creditors are residents of this State and the principal assets are in the hands of resident receivers under an order to retain custody thereof pending the determination of a proceeding in the domiciliary State to determine which one of two rival boards of directors is the legally constituted body, and there is nothing to show that either assets or creditors are located in Delaware, it is absolutely imperative that the receivers holding the funds in this State be designated as ancillary receivers for the protection of New York creditors, so that the assets in this State may be administered under the supervision of the New York courts.

The request of the Delaware receiver that the fund in New York be turned over to him in view of the fact that he stands ready to furnish a bond to insure the equitable treatment of New York creditors at his hands cannot be complied with, since to accede to his application would subordinate the rights of domestic creditors to those of foreign creditors and subject them to the inconvenience and expense of seeking dividends outside this State.

The Delaware receiver may intervene in proceedings before a New York referee to determine the validity of claims against the corporation in view of the factional disputes of stockholders and creditors.

The legal expenses of the domiciliary receiver upon the intervention is a proper charge against the corporate fund in this State; the amount thereof, however, must be fixed by the court and not by the receiver and can only be predicated upon services actually rendered.

The allowance previously granted the attorney for the plaintiffs in a stockholder's action to restrain the consummation of the sale of substantially all of the assets of the corporation and to compel the board of directors to account for their alleged acts of waste, will be allowed to stand in the absence of any proof showing that it should be set aside, particularly at this time, and by summary means.

Application may be made to the court at the proper time for the payment of New York creditors, if there is no probability of actual insolvency.

ACTION by stockholders to restrain consummation of sale of substantially all the assets of a Delaware corporation and to compel the board of directors to account for their alleged acts of waste.

*Paul Jones,* for the plaintiffs and New York receivers.

*Milton C. Weisman* [*S. A. Lowenstein* of counsel], for John B. Hutton, Delaware receiver.

LEVY, J. This is one of a series of applications made to the court involving the disposition of certain funds belonging to the Sinaloa Exploration and Development Company, a Delaware corporation. These moneys are the proceeds of a settlement of the main action as against defendant Doherty and are now held by the receivers appointed by this court under order to retain custody pending the determination of a proceeding in the domicilary State as to which one of two rival boards of directors is the legally constituted body. An intelligent understanding of the situation upon these motions requires a brief summary of the facts which led to the main litigation.

The action was begun in this State by certain stockholders to restrain the consummation of a sale of substantially all the assets of the corporation to Henry L. Doherty, and to compel the board of directors to account for their alleged acts of waste. While the charges were directed against all the defendants, the chief grievance seemed to be against Philip Francis, the president and organizer of the corporation, who was accused of conducting the business at his own convenience, if not for his own benefit, without consulting the interests of the stockholders. Service on Francis was never effected because of his absence in the West, where he is reported to have died about November 1, 1924, but after the action was instituted.

In May, 1925, a temporary injunction was issued out of this court restraining the defendant Doherty from disposing of the assets of the corporation in his hands, and on October 29, 1925,

when the case appeared for trial at Special Term, the plaintiffs, with permission of the court, settled the action against Doherty, the corporation ratifying the sale of the aforementioned Sinaloa assets to him, upon payment of $115,000. Of this sum $10,000 was ordered paid to the attorney for the plaintiffs, Paul Jones, for his legal services in the litigation, and the balance directed to be paid to the receivers appointed by the court to be deposited in a bank, and not to be withdrawn without its further orders. This temporary disposition was a precaution necessary by reason of an internal conflict between at least two factions in the corporation, one representing the Francis adherents, and the other the dissatisfied stockholders, at whose promptings the title action herein was instituted. Each party claimed its own board to be · the legally constituted board of directors. The anti-Francis faction at the annual stockholders' meeting held in this State on November 17, 1924, had elected a board of five directors. The validity of this election was challenged in the Delaware courts, and on August 3, 1925, the chancellor decided that the 1924 election was null and void because of the lack of a quorum of stockholders, and appointed a master to conduct a new election. The ousted board appealed and stayed the proceedings upon filing a supersedeas bond. The decree of the chancellor was, however, affirmed by the Supreme Court of Delaware on November 7, 1925. By reason of this the duly elected board serving prior to the election of November, 1924, continued as holdover directors.

On October 27, 1925, an action in equity was begun in the State of Delaware by one Irma Haas, a stockholder, against the corporation, praying that it be declared insolvent, that a receiver be appointed, and that its directors, etc., be perpetually enjoined from interfering with the corporate assets. The answer filed by the corporation through the officers in control as holdovers, admitted all the allegations of the complaint, except that it set forth that its aggregate property at a fair valuation was sufficient to pay its debts. This pleading was signed by Edward McSweeney as president and Gertrude Corless as secretary. Both these officers belong to the old Francis board, so called. On the very same day a decree was entered by the Court of Chancery of Delaware, declaring the corporation insolvent in the sense that it was unable to pay its debts as they matured in the usual course of business, appointing John B. Hutton receiver under a bond of $3,000, and perpetually restraining the corporation and its officers from taking part in, or interfering with, the business and affairs of the company. While it does not definitely appear from the voluminous affidavits in the various applications before me what the effect of this order

is, a reading of it in conjunction with the complaint would seem to indicate that it is the first decretal step in the dissolution of the corporation in the State of its creation. Before the action which led to the permanent receivership order was instituted, a call had been issued for the annual election of directors to be held in New York on November 9, 1925, and at this meeting at which the anti-Francis faction was seemingly in the majority, a new board was elected.

In view of the last situation, no further reason would ordinarily exist for continuing the New York receivership, were it not for the intervening appointment of the Delaware receiver. The latter has now made an application that the proceeds in the hands of the New York receivers be turned over to him for administration and distribution under the order of appointment in the domiciliary State. This brings up for consideration the extent to which the courts of this State will recognize the status of the receiver appointed by the State in which the corporation was organized. Before attempting to solve this problem, it should be noted as bearing upon the equities, that about eighty-four per cent of the creditors and a similar percentage of stockholders reside in New York; that there appear to be no Delaware creditors, and that there are no assets of the corporation located in that State; that the decree appointing the receiver was obtained practically *pro confesso*, with the consent of holdover officers, who obviously did not represent the will of the majority of stockholders and who exercised their technical right to acquiesce in such decree while the call for the annual election was then pending and the event itself was to be held but two days later.

These circumstances are indicated not with any attempt to question the title of the Delaware receiver, since principles of comity prevent this court from disputing it, but merely to manifest the extent to which these facts compel the scrutiny of an application which would deprive New York creditors of their right to prove their debts in their own forum. For purposes of dissolution and distribution among stockholders of any surplus, the domiciliary receivers' rights are undoubtedly paramount. But as to administration of the funds in this State for the benefit of resident creditors, the strongest reasons must exist for this court to divest itself of the supervision over such funds and of the power to protect its own citizens in their claims against such moneys. The general principles on this point are well understood. They are aptly expressed in *Sands* v. *Greeley & Co.* (88 Fed. 130) as follows: " ' Where a receiver, administrator, or other custodian of an estate is appointed by the courts of one State, the courts of that State

reserve to themselves full and exclusive jurisdiction over the assets of the estate, within the limits of the State.' *Reynolds* v. *Stockton,* 140 U. S. 254, 11 Sup. Ct. 773. It rests in the discretion of the court appointing the receiver whether the assets within its jurisdiction shall. be distributed under its own direction or shall be transmitted to the primary receiver. *U. S.* v. *Coxe,* 18 How. [U. S.] 105. *It is eminently proper that claimants residing within its jurisdiction should be relieved from the expense and inconvenience of proving their claims in other jurisdictions,* and that provision should be made for securing to them equality of distribution in respect to the whole assets of the corporation; but there is no hard and fast rule to control the discretion of the court in making such distribution of the assets as shall be just to all creditors, and ultimately effect a ratable distribution of all the property of the corporation. *Buswell* v. *Supreme Sitting,* 161 Mass. 224, 36 N. E. 1065; *Baldwin* v. *Hosmer,* 101 Mich. 119, 59 N. W. 432." (Italics mine.)

The same principle is succinctly stated in *Willitts* v. *Waite* (25 N. Y. 577, 587), in these words: " The State will do justice to its own citizens so far as it can be done by administering upon property within its jurisdiction, and will yield to comity  *  *  * only so far as ·may be done without impairing the remedies or lessening the securities which our laws have provided for our own citizens."

To meet the objection that the powers of the New York receivers are merely in the nature of a custodianship of the funds, which must yield to those of the plenary receiver — an objection which in the light of the policy of the State to protect its own citizens who are creditors, cannot be entertained without material reservations — an application has been made on behalf of the New York interests to appoint the present receivers or others in their place as ancillary ones. This, in the circumstances, is entirely proper. The argument in opposition to the cross-motion for ancillary receivers misconceives the purpose of the application in urging that special circumstances must be shown which will move the court to appoint a receiver of a corporation. Whatever force such a contention would have in an independent application for a receiver of a foreign corporation, has no weight here. The reasoning in *Reusens* v. *Manufacturing & Selling Co. of America* (99 App. Div. 214, 216) clearly points this out: " There is a radical distinction between an action which seeks to have a receiver appointed of the property and assets of a corporation in order that they may be preserved from unlawful disposition and waste, and an action for the appointment of a receiver of the corporation. In the former case it is settled by an abundance of authority that

the action will lie. (*Woerishoffer* v. *North River Construction Co.*, 6 Civ. Proc. Rep. 113; *Popper* v. *Supreme Council*, 61 App. Div. 405.) The exercise of such equitable jurisdiction has been recognized and applied by the General Term in this department (*Redmond* v. *Hoge*, 3 Hun, 171), and by this court (*Hallenborg* v. *Greene*, 66 App. Div. 590, 599):"

The appointment of such a receiver is absolutely necessary for the protection of New York creditors, and is made imperative by the situation arising from the appointment of a plenary receiver in Delaware. With the recognition of the Delaware receivership, upon the principle of comity, the New York custodians would necessarily be deemed ancillary receivers, without, however, yielding in the administration of the New York assets, to the authority of the primary receiver, but receiving their instructions from the courts of this State. The domiciliary receiver urges that in view of his readiness to furnish a large bond to insure the equitable treatment of New York creditors at his hands, this court as a matter of courtesy to the decree of a sister State, might direct that the fund be surrendered for administration in Delaware. But to paraphrase the language in *Kelly* v. *Crapo* (45 N. Y. 86, 95) the question is whether we ought to deprive the domestic creditor of the benefit of our laws, subordinate his rights to those of foreign creditors, and subject him to the inconvenience and expense of seeking dividends in a foreign State. There the Court of Appeals said: "There is no rule of comity requiring such complaisance. If it was a mere question of courtesy, we should promptly require the creditor to yield his claim, and render suitable indemnity for the de'ay and inconvenience which he had occasioned; but the question is one of far graver import. It involves the duty which a sovereign State, in the proper exercise of its powers, is required to discharge for the protection of the rights and interests of its own citizens."

But while the assets in the hands of the New York receivers are to be administered so as to protect the rights of our citizens, the former must proceed with a due degree of circumspection and scrutiny of alleged claims against these assets. A number of such claims of creditors have already been submitted to a referee and the Delaware receiver has asked leave to intervene in the proceedings before that officer. This request is not only reasonable but necessary in the interest of conservation, particularly in view of the peculiar conditions existing in this corporation by reason of what has already been adverted to as internal dissension among the stockholders. The affidavits contain numerous charges and counter-charges to the effect that some of the claims are fraudulent.

Temptations may exist on the part of certain stockholders who are also creditors to exaggerate their claims in the latter capacity in order to recoup the possible loss of a part of their investment. At present, the claims of the creditors who are siding with the anti-Francis faction are the chief subject of recrimination, but unquestionably creditors favoring the Francis faction will present claims also which may be the subject of similar attacks. The legal expenses of the domiciliary receiver upon the intervention, like those of the New York receivers, will be a charge against the fund. But this is not to be construed as sanctioning a contract of retainer which the Delaware receiver may have made with his attorney for anticipatory service, and for which he asks judicial approval. Compensation must be fixed by the court, not by the receiver, and only for services actually rendered, certainly not for prospective services which may never be furnished. As to the allowance previously granted the attorney for the plaintiffs, no good reasons are presented why it should be revoked, especially at this time and by this summary means. No one will seriously argue that his services were not of value to the corporation and its stockholders, particularly when it must be admitted that they brought an intolerable situation to issue.

I have referred to the necessity of protecting domestic creditors, and the question will doubtlessly arise upon the determination and allowance of creditors' claims, whether these ought to be paid forthwith, or reserved for equitable administration for the benefit of all creditors ratably after paying administration expenses which are preferred. It cannot be assumed that the assets are insufficient to pay all liabilities, and this, notwithstanding the determination of the Delaware chancellor. The decree of the latter does not lead to such an inference: *First,* because it holds that the corporation was insolvent only in a qualified sense; *secondly,* because it was predicated upon what is tantamount to a default. If the corporation is actually insolvent in the absolute sense, the preference extended to our citizens can only cover the mere determination of the amount of their claims in this jurisdiction. Courts are without power to favor domestic creditors in the actual distribution, which must be made upon the principle that equality is equity. (*Blake* v. *McClung,* 172 U. S. 239.) This philosophy is also adopted in *People* v. *Granite State Provident Association* (161 N. Y. 492) where the Court of Appeals (at p. 495) said: " All creditors of a corporation, wherever residing, are entitled, in case of insolvency, to have the general assets distributed among them upon principles of perfect equality." That case involved an insolvent building and loan association, the domicile of which was New Hampshire. The

creditors of the corporation were scattered in many States, and only one-fourth of the assets were located in New York State. The court permitted the administration and distribution of the fund in New Hampshire after the determination of the claims of New York creditors, and the filing of a bond in double penalty by the New Hampshire receiver to insure the payment to our citizens of their claims ratably. But this case is radically different from the one under consideration. Here, as already pointed out, eighty-four per cent of the creditors reside in New York and thus far we know of no creditors in Delaware. It does not appear that there are claims scattered in many States. Besides, the *Granite State* case did not hold that the domiciliary receiver could assume the entire administration of the claims of New York creditors in the sense of determining their validity, upon merely furnishing a bond. Such doctrine would be contrary to all precedent. On the other hand, whether actual payment beyond the necessary administration expenses should be ordered out of the fund in satisfaction of the allowed claims of creditors, depends entirely upon the condition of the estate at the moment. If there is no probability of actual insolvency, application may be made to the court at the proper time for the payment of such claims.

We must also consider the necessity of assisting the domiciliary receiver to realize on alleged uncollected assets of the corporation wherever situated. He pleads lack of funds for these purposes. There can be no doubt about his right to bring suit in this jurisdiction. Our courts regard the foreign receiver as representing the original owner and open their doors to him as they do to a domestic receiver. (*Mabon* v. *Ongley Electric Co.*, 156 N. Y. 196.) This same power inheres in him in his efforts to locate assets in other States. If the receiver should bring such actions in good faith and show probable cause, he will be entitled to an allowance for legal expenses out of the fund, regardless of the outcome of the litigation. If, again, it should be necessary for him to obtain advance disbursements to prosecute such actions, he may apply therefor upon notice to the New York receivers.

Finally, the court is asked to dispose of certain claims against the corporation by summary order. This, of course, will not be done, as the matters must be determined upon reference. It might seem at first that the claim of Joseph A. Burdeau, compromised by the directors for $1,250, should be fixed as a liability. The difficulty, however, is that the ratification by the directors took place after the appointment of the plenary receiver in Delaware. The power of the directors thereafter to compromise, except by authority of the court, is open to serious question. Then, again,

the directors themselves now urge that the compromise was made without knowledge by them of the fact that Burdeau had already received certain moneys from the corporation. It would seem, therefore, that this claim also should be heard by a referee, and its merits determined.

The motion for the appointment of ancillary receivers is granted, and that to direct the present New York receivers to turn over the sum of $105,000 to the Delaware receivers denied, as is the motion to compel the attorney for the plaintiffs to refund the sum of $10,000, as is also the motion to pay the sum of $10,000 to the attorney for the Delaware receiver.