JAMES DRURY and Others, Plaintiffs, v. HENRY L. DOHERTY, as Survivor of FRANK W. FRUEAUFF and HENRY L. DOHERTY, Together Constituting the Firm of HENRY L. DOHERTY & COMPANY, and Others, Defendants.

Supreme Court, New York County, March 21, 1928.

Corporations — receivers — application to confirm agreement between domiciliary receiver of corporation appointed in Delaware and ancillary receivers designated by Supreme Court in this State — agreement reflects effort to adjust controversy as to custody of funds of corporation in this State — agreement confirmed.

An agreement between the domiciliary receiver of a Delaware corporation and the ancillary receivers designated by the court which reflects an earnest effort to adjust a controversy as to the custody of the funds of the corporation located in this State should be confirmed where it secures for the New York creditors the greatest possible benefits which are available but particularly where the creditors and stockholders of the corporation who have passed years anxiously waiting for their just due will now more readily realize under the terms of the arrangement proposed the fulfillment of their hopes.

MOTION for approval and confirmation of proposed agreement between domiciliary and ancillary receivers.

*Ralph F. Kane,* for the ancillary receivers.

*Milton C. Weisman,* for the domiciliary receiver.

*Paul Jones,* for the plaintiffs.

*Weinberg & Weinberg* [*Reuben Weinberg* of counsell], for Cornelius Stack.

LEVY, J. This is a motion for the approval and confirmation of an agreement proposed between the domiciliary receiver of the Sinaloa Exploration and Development Company appointed in the State of Delaware and the ancillary receivers designated by this court. The agreement has already been approved by the Delaware court and only requires the confirmation of this court to become effective. It reflects an earnest effort to adjust a con-

troversy as to the custody of the funds of the corporation, located in this State. More than two years ago an application by the domiciliary receiver for a summary order directing that the moneys be turned over to him, met with defeat. (*Drury* v. *Doherty*, 127 Misc. 263.) There, it was indicated that claimants residing within this jurisdiction should be relieved of the expense and inconvenience of proving their claims in another State, and that provision should be made for securing to them equality of distribution in respect to the aggregate assets of the corporation. (*Sands* v. *Greeley & Co.*, 88 Fed. 130.) It was also stated that after such claims are established, the matter of their payment would depend upon the condition of the estate at the moment. From this the inference seemed to flow that this court would be justified in directing payment of such claims provided no doubt existed of the solvency of the corporation and its ability to pay in full all the creditors *wherever situated.* Since that decision was rendered, there was published the determination of the Court of Appeals in *Matter of People (Norske Lloyd Ins. Co.)* (242 N. Y. 148), which appears to bear analogy to the situation here presented. An appeal having been taken from the order denying the motion to turn over, the ancillary receivers found themselves in the position of being obliged to resist it. They argue, and rather emphatically, that in the light of Chief Judge HISCOCK's opinion in the *Norske Lloyd Case* (*supra*) it is not unlikely that the order of this court would be modified by directing the turning over of the fund to the Delaware receiver for distribution in that jurisdiction, although there might be imposed as a condition a provision permitting domestic creditors to prove their claims in this State. This method of procedure was apparently approved in the case cited, the court saying (at pp. 167, 168): "It is, however, the fact that a large number of the domestic claims here involved are respectively of such small amount that they would scarcely bear the expense of presentation and proof abroad and, therefore, we think that under a proper extension of the principles above referred to it would be proper for our courts to provide as a condition of transmission of the funds held by the Superintendent of Insurance that domestic creditors should be allowed in some proper manner to prove their claims in this country *as against, and for the purpose of distribution of assets by, the foreign receiver.* (*New York Security & Trust Co.* v. *Equitable Mortgage Co.*, 71 Fed. Rep. 556.) " (Italics mine).

The court did, however, lay down this important rule (at pp. 166, 167): "*It is the duty of an ancillary receiver in possession of property of a foreign corporation, subject to no specific lien or claim either by statute or process, to transmit that property under safe-*

*guarding regulations if necessary to the primary receiver for equitable distribution amongst all the creditors* rather than to apply it first in full payment of local creditors." (Italics mine.)

The reason for the rule is thus stated (at pp. 164, 165): " The word ' ancillary ' defines a receiver who has been appointed in aid of and in subordination to a foreign receiver for the purpose of collecting and taking charge of the assets of the insolvent corporation in the jurisdiction where he is appointed. This conception of such a receiver indicates that he will act in aid of the primary receivership and not to the end of thwarting its purposes. The ordinary rule of distribution of the assets of an insolvent is equality amongst creditors of the same class *and this rule requires, subject to the consideration hereinafter discussed, transmission of the funds in the hands of the Superintendent as ancillary receiver and not subject to any particular claim or lien as hereinbefore discussed, to the primary receiver for distribution pro rata amongst the creditors of the Insurance Company.* (*Blake* v. *McClung*, 172 U. S. 239; *Central, etc., Co.* v. *Farmers, etc., Co.*, 113 Fed. Rep. 405; affd., 125 Fed. Rep. 1001.) Such is the disposition which, as matter of fact, has been required by our courts under identical or analogous circumstances by decisions which are controlling in this proceeding. In *People* v. *Granite State Provident Association* (161 N. Y. 492) the court dealt with two funds in the hands of the Superintendent of Banks. One consisted of the proceeds of general assets of the insolvent corporation; the other of the proceeds of a special deposit which had been required under the Banking Law before the corporation could transact business here. The latter fund which has already been mentioned was subject to rights of creditors similar to those given to the first class of policyholders in this proceeding and it was so applied. The first fund was subject to no specific claims or liens statutory or otherwise *and it was held that it should be transmitted to the foreign receiver of the corporation ' to be administered and distributed at the home of the corporation,'* and it was said: ' All creditors of a corporation wherever residing are entitled in case of insolvency to have the general assets distributed among them upon principles of perfect equality. The courts of one State have no right to favor domestic creditors in the distribution but it must be made upon the principle that equality is equity.' " (Italics mine.) But this decidedly important qualification was added (at p. 167): " There still remains to be considered one rule of administration which may be applied in favor of domestic creditors in respect of the funds in the hands of the ancillary receiver. This is to the effect that domestic assets will not as against domestic creditors be transmitted to a foreign

receiver or liquidator if there is any danger that the latter's distribution thereof will be made in a manner unfair to the domestic creditors. (*Matter of People [City Equitable Fire Ins. Co.]*, 238 N. Y. 147.) There is nothing new before us to indicate that our domestic creditors would suffer from any unfair methods adopted by the foreign receiver."

The proposed agreement submitted appears to me to secure for the New York creditors the greatest possible benefits which are available. It provides for the advertising and mailing of notices and assures them the opportunity of proving their claims in this State; it stipulates also that the Delaware courts shall be bound by the amounts here found to be due to such creditors; that all administration expenses incurred in this jurisdiction shall be paid after the adjudication of the local claims, and that after deduction of such expenses the fund remaining shall be turned over to the domiciliary receiver upon his furnishing a bond of a surety company amenable to process in this State, guaranteeing to domestic creditors the payment of the full amount of their claims, unless a *pro rata* distribution becomes necessary. In addition, it grants to the ancillary receivers the right to intervene in all proceedings taken in the State of Delaware, or elsewhere, in connection with the proof of claims by other creditors, to the end that only such shall be allowed as may be genuine and valid. A time limit is prescribed for the termination of liquidation proceedings in the sister State with the purpose of securing an expeditious conclusion of what undoubtedly will otherwise prove a long drawn out controversy. Indeed, the creditors and stockholders who have spent years anxiously waiting for their just due, will, under the terms of the arrangement proposed, more readily realize the fulfillment of their hopes.

Statements are, however, made in opposition to the application to the effect that " unfounded claims will be presented * * *, to combat which the corporation will be obliged to invoke the aid of the Delaware courts, and this, it is submitted, would entail considerable expense and trouble." The contention is thus advanced that false and fraudulent demands will be presented which the Delaware court could easily be imposed upon to allow. Assuming, for the purpose of this discussion only, the truth of the charges of friendship and intimacy between those who, it is feared, will attempt to foist such unfounded claims, and the domiciliary receiver, it must nevertheless be obvious that this falls far short of even tending to indicate that there is any danger that distribution will ultimately be made in a manner unfair to our creditors. Aside from the fact that this court is unwilling to

accept the blanket indictment laid, it must be borne in mind that it is the court in Delaware which, in the final analysis, will be required to pass upon the validity of the respective claims there urged. Of course, there could be no reflection in this direction, nor will it be assumed that opposing counsel here on the oral argument willfully intended the slightest insinuation upon the integrity of the Delaware court. His remarks will be treated as innocuous. Therefore, as already pointed out, the provisions of the agreement suggested, in respect to the right of the ancillary receivers to intervene and the requirement of the bond, speak eloquently for a just administration of the affairs of this entity.

Moreover, as to the objection that there is likelihood that invalid claims may be filed in Delaware, it may suffice to observe that this possibility would, at all events, exist to an equal extent even if this application were denied. Unscrupulous claimants may still attempt pursuit of the estate. Unconscionable claims may well be presented. Their adjudication, however, is quite another matter. As long as the primary receivership continues in Delaware, claimants may prove their claims there. They cannot be compelled to do so here. Even if it be assumed that at some time in the future the Delaware receivership will be vacated, of which no real prospect appears, the situation would·be no different. In such event the ancillary receivership would fall too. The corporation would then resume function and, being of Delaware birth, it could be sued in the courts of that State by such creditors as might prefer that forum. It follows, therefore, that on no conceivable theory can distribution of the corporation's assets be made without recognizing the validity of claims found to exist by the courts of that State. Their judgments would be entitled to full faith and credit here. It must be manifest that nothing can be gained by continuing a retention of the funds even if that could legally be accomplished.

In the circumstances, the motion is granted. Order signed.